UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

ROSALBA ESPINAL and JUAN RIVERA, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

SEPHORA USA, INC.,

Defendant.

Case No. 1:22-cv-03034-PAE-GWG

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF LIQUIDATED DAMAGES**

Dated: December 1, 2023

**BURSOR & FISHER, P.A.**
Yitzchak Kopel
Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
ykopel@bursor.com
aleslie@bursor.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ....................................................................................................1

ARGUMENT ....................................................................................................1

I. THE LAW OF THE CASE DOCTRINE COMPELS THE COURT TO APPLY *VEGA* AND TO DENY DEFENDANT'S MOTION .................................................................. 1

A. This Court Already Held That *Vega* Is Binding .................................................... 2

B. *Vega* Expressly Held That Manual Workers Who Receive Biweekly Pay Are Entitled To Liquidated Damages ............................................................................ 4

C. Defendant's Reliance on *Phillips v. Max Finkelstein, Inc.* Must Be Rejected Because That Holding was Overturned on Appeal to Conform with *Vega* ............ 6

D. Defendant's Argument Based on *IKEA* Has Been Rejected At Least 9 Times ...... 7

II. LIQUIDATED DAMAGES UNDER §198(1-A) SERVE IMPORTANT POLICY OBJECTIVES ............................................................................................ 11

A. Liquidated Damages Were Enacted To Compensate Employees For An Injury Difficult To Calculate ........................................................................... 11

B. The Harm Experienced By Lack Of Access To Funds For Low-Wage Workers Goes Well Beyond Interest Rates ...................................................................... 11

C. Liquidated Damages Were Also Intended To Serve As A Deterrent To Future Misconduct............................................................................................ 13

CONCLUSION....................................................................................................14

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Beh v. Cmty. Care Companions Inc.*,
2021 WL 3914297 (W.D.N.Y. Feb. 1, 2021) ........ 10

*Caul v. Petco Animal Supplies, Inc.*,
2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) ........ 10

*Davis v. Banana Republic LLC*,
2023 WL 5969597 (E.D.N.Y. Sept. 14, 2023) ........ 3

*Day v. Tractor Supply Co.*,
2022 WL 19078129 (W.D.N.Y. Dec. 1, 2022) ........ 9

*DiLaura v. Power Auth. of N. Y.*,
982 F.2d 73 (2d Cir. 1992) ........ 1

*Douglas v. Cunningham*,
294 U.S. 207 (1935) ........ 13

*Freeland v. Findlay's Tall Timbers Distribution Ctr.*, *LLC*,
2023 WL 4457911 (W.D.N.Y. July 11, 2023) ........ 9

*Gottlieb v. Kenneth D. Laub & Co.*,
82 N.Y.2d 457 (1993) ........ 7

*Granados v. Traffic Bar & Rest., Inc.*,
2016 WL 7410725 (S.D.N.Y. Dec. 21, 2016) ........ 14

*Harris v. Old Navy, LLC*,
2022 WL 16941712 (S.D.N.Y. Nov. 15, 2022) ........ 3

*Hayman Cash Register Co. v. Sarokin*,
669 F.2d 162 (3d Cir.1982) ........ 1

*IKEA U.S. Inc. v. Indus. Bd. Of Appeals*,
660 N.Y.S.2d 585 (1997) ........ 7, 8, 9, 10

*In re PCH Assocs.*,
949 F.2d 585 (2d Cir. 1991) ........ 1

*Lillbask ex rel. Mauclaire v. Sergi*,
193 F. Supp. 2d 503 (D. Conn. 2002) ........ 1

*Mabe v. Wal-Mart Assocs., Inc.*,
2021 WL 1062566 (N.D.N.Y. Mar. 18, 2021) ..... 8

*Mabe v. Wal-Mart Assocs., Inc.*,
2022 WL 874311 (N.D.N.Y. Mar. 24, 2022) ..... 8, 10

*Nobel Insurance Co. v. City of New York*,
2006 WL 2848121 (S.D.N.Y. Sept. 29, 2006) ..... 1, 2

*People v. Vetri*,
309 N.Y. 401 (1955) ..... 12

*Phillips v. Max Finkelstein, Inc.*,
115 N.Y.S.3d 866 (N.Y. Cnty. Ct. 2019) ..... 6, 7

*Phillips v. Max Finkelstein, Inc.*,
153 N.Y.S.3d 750 (App. Term 2d Dep't 2021) ..... 6, 7, 9, 10

*Rana v. Islam*,
887 F.3d 118 (2d Cir. 2018) ..... 5, 9, 11

*Rankine v. Levi Strauss & Co.*,
2023 WL 3582323 (S.D.N.Y. May 22, 2023) ..... 6

*Rodriguez v. Lowe's Home Centers, LLC,*
2021 WL 3848268 (E.D.N.Y. Aug. 27, 2021) ..... 5, 8

*Sorto v. Diversified Maintenance Systems, LLC*,
2020 WL 8413553 (E.D.N.Y. Nov. 15, 2020) ..... 7, 9

*Truelove v. Northeast Capital & Advisory*,
95 N.Y.2d 220 (2000) ..... 7

*V.S. v. Muhammad*,
595 F.3d 426 (2nd Cir. 2010) ..... 9

*Vega v. CM & Assoc. Const. Mgt., LLC*,
175 A.D.3d 1144 (2019) ..... Passim

**STATUTES**

18 U.S.C. § 2710 (c)(2)(A) ..... 13

47 U.S.C. § 227(b)(3)(B) ..... 13

**OTHER AUTHORITIES**

Labor Law Article: 6: A Misunderstood Law That Fully Protects All Employees Wages, 80 Alb. L. Rev. 1355 (2016/2017)........................................................................................12

N.Y. Bill Jacket, 2010 S.B. 8380........................................................................................14

## INTRODUCTION

After denial of its motion to dismiss, Defendant asserts the same arguments this Court and *Vega* already rejected. However, under the law of the case doctrine, this Court is compelled to rule as it did in its Report & Recommendation ("R&R")—it has an obligation to follow *Vega*.

Despite this, Defendant again wrongfully asserts Plaintiffs are not entitled to liquidated damages because there are no wages "found to be due." Defendant's argument ignores this Court's R&R, the holding in *Vega*, and the holding in every other case to address this issue in light of *Vega*. As this Court pointed out, it did "not write on a clean slate with respect to these issues" when coming to its conclusions at the motion to dismiss stage. R&R at 14. *Vega's* holding that employees who were paid untimely may recover liquidated damages must be followed. This is not a close call. Not a single court has said otherwise, and therefore, the "persuasive data" necessary to depart from *Vega*'s holding does not exist.

## ARGUMENT

### I. THE LAW OF THE CASE DOCTRINE COMPELS THE COURT TO APPLY *VEGA* AND TO DENY DEFENDANT'S MOTION

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Nobel Insurance Co. v. City of New York*, 2006 WL 2848121, at *4 (S.D.N.Y. Sept. 29, 2006) (quoting *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991)). "The purpose of the law of the case doctrine is to promote the judicial system's interest in finality and in efficient administration." *Lillbask ex rel. Mauclaire v. Sergi,* 193 F. Supp. 2d 503, 511 (D. Conn. 2002) (quoting *Hayman Cash Register Co. v. Sarokin*, 669 F.2d 162, 165 (3d Cir.1982) (internal quotation marks omitted)). Thus, "a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in successive stages of the same litigation." *DiLaura v. Power Auth. of N. Y.*, 982 F.2d 73, 76 (2d

Cir. 1992). While the law of the case doctrine does not necessarily preclude a court from reconsidering issues on summary judgment that have initially been raised in the context of a motion to dismiss, courts will not reconsider prior rulings on legal conclusions which have not been altered by discovery or by subsequent developments in the law. *Nobel Ins. Co.*, 2006 WL 2848121, at *4 ("[t]o the extent, however, that [the judge] made legal conclusions which are not in any way altered by discovery, or by subsequent developments in the law, this court will not here reconsider those prior rulings.").

### A. This Court Already Held That *Vega* Is Binding

This Court was clear in its R&R – it has an "[o]bligation to [f]ollow *Vega*." Report & Recommendation, Doc. No. 32, pg. 14. Because Defendant could not produce "'persuasive data' needed to ignore Vega's definitive ruling" this Court held it must "defer to the holding in Vega." *Id*. Despite this holding, Defendant says the quiet part loud – it is asking the Court to reconsider what it has already decided and "adhere to its prior reasoning[1] and find that the 'underpayment' Plaintiffs allege is not underpayment at all, and that Plaintiffs are not entitled to any amount of liquidated damages pursuant to the plain language of § 198(1-a)." Def MSJ at 6. This "prior reasoning," however, was not this Court's decided upon rule of law. The decided upon rule of law was that this Court will "defer to the holding in *Vega*." R&R, pg. 15. More specifically, this Court wrote:

> In *Vega*, the First Department held that NYLL § 198(1-a) provides an express private right of action to enforce the weekly wage requirement because the term "underpayment" in the statute encompasses the late payment of wages. Vega reasoned that the word "underpay" means "to pay less than what is normal or required" and that "[t]he moment that an employer fails to pay

[1]The "prior reasoning" Defendant is referring to is the court's reference to the "common usage" of the term "underpayment" in discussing its possible meaning and whether or not Plaintiffs were "underpaid" within the meaning of § 198(1-a).

> wages in compliance with section 191(1)(a), the employer pays less than what is required."
>
> -----
>
> While we would likely not reach this conclusion ourselves if the issue were presented afresh, for reasons explained further below, **we feel bound to follow Vega's holding on this point.**

R&R, pg. 9-11 (citing *Vega*) (cleaned up).

Moreover, Defendant beseeches for this Court to act on the doubts it expressed in its R&R regarding the holding in *Vega*. But again, this Court was explicitly clear:

> …[O]ur doubts about the correctness of the holding in *Vega* do not constitute sufficiently 'persuasive data' to cause us to believe that the New York Court of Appeals would reject *Vega*'s conclusions. If the questions raised had clear cut or obvious answers, we would not hesitate to find that our won reasoning provided the 'persuasive data' needed to ignore *Vega*'s definitive ruling. But the answers are not clear cut or obvious, and this uncertainty causes us to defer to the holding in Vega.

R&R, pg. 15. As the Court points out, its mere doubts hold no water, as other courts have also criticized *Vega*'s holding yet still concluded it must be followed. R&R at 15 (citing *Harris v. Old Navy, LLC*, 2022 WL 16941712 (S.D.N.Y. Nov. 15, 2022))*; see also Davis v. Banana Republic LLC*, 2023 WL 5969597, at *7 (E.D.N.Y. Sept. 14, 2023) ("Even if this [c]ourt agreed with those doubts, it does not suffice as 'persuasive evidence' to reject *Vega*"); *Quintanilla v. Kabco Pharms., Inc.*, Case No. 19-cv-06752, ECF No. 27, at 17, Hrg. Tr. (E.D.N.Y. June 30, 2020) (Judge Chen stated she found the reasoning of *Vega* to be "a little tortured," but nonetheless correctly recognized that her court was "bound to follow appellate court decisions unless ... there is substantial evidence or reason to believe that the Court of Appeals would find otherwise."). As every court to examine the *Vega* decision has recognized, the requisite "persuasive evidence" to part from its holding simply does not exist.

By adopting this Court's Report & Recommendation in the Decision and Order on Defendant's Motion to Dismiss, *see* ECF No. 39, the law of the case compels the Court to again hold *Vega* governs this action.

**B. *Vega* Expressly Held That Manual Workers Who Receive Biweekly Pay Are Entitled To Liquidated Damages**

Defendant argues there is no amount "due" to Plaintiffs because they were eventually paid in full, albeit late, and thus were not underpaid. MSJ at 5. Defendant, however, does not cite to a single case that supports this contention. That is because no such case exists. As the Court made clear:

> *Vega* reasoned that the word "underpay" means "to pay less than what is normal or required" and that **"[t]he moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required."** … While we would likely not reach this conclusion ourselves if the issue were presented afresh, for reasons explained further below, we feel bound to follow *Vega*'s holding on this point.

R&R at 9-11 (emphasis added). Under section 198(1-a), as *Vega* held, Plaintiffs are entitled to liquidated damages equal to 100 percent of the total amount of wages "found to be due" based on their underpaid wages. Here, the moment Defendant "fail[ed] to pay wages in compliance with section 191(1)(a)" was at the end of the first week for each biweekly pay period. Thus, the "amount due" was Plaintiffs' earnings at the end of the first week for each biweekly pay period. The fact that this was paid late by Defendant does not "eviscerate the employee's statutory remedies." *Vega*, 175 A.D.3d at 1145.

Despite *Vega*'s clear guidance, Defendant argues the New York Legislature's use of the words "wages found to be due" in the NYLL could not possibly apply to "a payment that occurs later or less frequently than prescribed." MSJ at 6. But that is wrong. *Vega* makes clear, "the term underpayment encompasses the instances where an employer violates the frequency

requirements of NYLL § 191(1)(a) but pays all wages due before commencement of an action." *Vega*, 175 A.D.3d at 1145. Any holding otherwise would allow an employer to "cure a violation and evade the statute by paying the wages that are due before the commencement of an action." *Id*.

The *Vega* decision is well-reasoned. The Second Circuit has explained that NYLL § 198 (1-a), although not identical to the FLSA liquidated damages provision, has "no meaningful differences, and both are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed." *Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018). In relying on this reasoning, the *Vega* court concluded "liquidated damages may be available under NYLL § 198 (1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages."

The *Vega* decision also bases its reasoning on the NYLL's "legislative history" which "reflects that in addition to imposing 'stronger sanctions' to compel employer compliance, '[t]he imposition of liquidated damages will also compensate the employee for the loss of the use of the money to which he was entitled.' The employee loses the use of money whether he or she is never paid, partially paid, or paid late." *Vega*, 175 A.D.3d at 1146 n.2 (quoting Governor's Approval Mem, Bill Jacket, L 1967, ch 310 at 1524; 1967 NY Legis. Ann. at 271).

As this Court and every court to examine the *Vega* decision has recognized, the requisite "persuasive evidence" to part from its holding simply does not exist. This is not even a close call. In fact, in holding that it must follow *Vega*, this Court stated "[w]e are not alone in reaching this outcome. Since *Vega*, every court in this Circuit to consider that decision appears to have followed its construction of the New York Labor Law." R&R at 15 (citing *Rodriguez v. Lowe's Home Centers*, *LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021) (internal quotes omitted). This

Court further cited "examples of such cases – most of which cite many other cases – are legion." R&R at 15.

For the same reasons this Court held it was obligated to follow *Vega* in deciding on Defendant's motion to dismiss, it must hold it is obligated to follow *Vega* in deciding on Defendant's motion for summary judgment.

### C. Defendant's Reliance on *Phillips v. Max Finkelstein, Inc.* Must Be Rejected Because That Holding was Overturned on Appeal to Conform with *Vega*

Citing *Phillips*, Defendant argues "[w]hether in a legal action or through administrative action," other than an employer's good faith belief that it acted in accordance with the law, an adjudicating body has 'no discretion' in ordering liquidated damages where an underpayment is found." MSJ at 8. That is wrong. As Judge Swain explained in *Rankine v. Levi Strauss & Co.*, 2023 WL 3582323, at *5 (S.D.N.Y. May 22, 2023) "[t]hough *Phillips v. Max Finkelstein, Inc.*, 66 Misc. 3d 514, 516-19, 115 N.Y.S.3d 866 (N.Y. Cnty. Ct. 2019), was issued after *Vega* and reached a contrary result, Defendant's reliance on it is similarly misplaced. While the Suffolk County Court in that action concluded that it need not follow *Vega* on the basis that the Second Department had reached a result contrary to *Vega*'s reasoning, this conclusion was deemed erroneous on appeal, and the court's order was modified to conform with *Vega*." (citing *Phillips v. Max Finkelstein, Inc.*, 73 Misc.3d 1, 153 N.Y.S.3d 750, 752 (App. Term 2d Dep't 2021) ("As this court is bound by the principles of *stare decisis* to follow precedents set by the Appellate Division of another department until the Court of Appeals or the Appellate Division, Second Department, pronounces a contrary rule, the decision of the Appellate Division, First Department, in [*Vega*], is controlling on the issue of whether the plaintiff stated a cause of action for damages, pursuant to Labor Law §§ 191(1)(a) and 198(1-a). Thus, the Suffolk County Court erred in dismissing plaintiff's first

cause of action.”)). Accordingly, Defendant’s argument that *Phillips*, 66 Misc. 3d 514, precludes liquidated damages must be rejected. *E.g.*, MSJ at 8-9.

### D. Defendant’s Argument Based on *IKEA* Has Been Rejected At Least 9 Times

Defendant claims the six-sentence upholding of a Commissioner of Labor’s determination that IKEA violated Section 191 and imposing a fine somehow eviscerates liquidated damages. MSJ at 8-9. But Defendant’s exact argument has been rejected at least 9 times, as set forth below.

For starters, this argument was rejected by the Second Department in *Phillips*, 73 Misc.3d 1, whereby the court found that “[a]lthough section 218 authorizes the Commissioner to impose civil penalties for violations of article six of the Labor Law, **it does not preclude private causes of action.**” 73 Misc. 3d, at 3-4. (emphasis added). “Labor Law § 198, which authorizes the Commissioner to bring ‘any legal action necessary’ on behalf of ‘any employee paid less than the wage to which he or she is entitled’ [] also specifically authorizes wage claims by employees, and states that the remedies provided by article 6 of the Labor Law ‘may be enforced simultaneously or consecutively so far as not inconsistent with each other.’” *Id.* at 4 (internal citations omitted).

Here, Defendant does not argue (nor could it) that a private right of action is not available pursuant to Article 6 of the NYLL, which covers Plaintiffs’ instant claim. *See Gottlieb*, 82 N.Y.2d at 461 (“the statutory provision in [NYLL] article 6 which generally regulates payment of wages by employers and creates reciprocal rights of employees is Labor Law § 191”); *Truelove v. Northeast Capital & Advisory*, 95 N.Y.2d 220, 224-225 (2000) (“an employer [is] subject to both civil and criminal liability for failing to pay ‘wages’ as required by [NYLL § 191]”); *see also Sorto*, 2020 WL 8413553, at *2 (recognizing that a violation of NYLL § 191 constitutes “a failure to pay wages”).

Moreover, there is no conflict between Section 198 and Section 218. *See* NYLL § 218(4) (“…the civil penalty provided for in this section shall be in addition to and may be imposed

concurrently with any other remedy or penalty provided for in this chapter"); NYLL § 198(2) ("…the remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other"); *see also Vega*, 175 A.D. 3d at 1147 ("[NYLL § 198] provides that individuals may bring suit against an employer for violations of the labor laws, even if the Commissioner chooses not to do so.").

Accordingly, the existence of a regulatory mechanism does not eliminate the structure of Article 6, which permits employees to privately enforce wage claims. Section 198(1-a) "provides for an express private right of action for underpayment of wages." *Mabe*, 2022 WL 874311, at *6. For this reason, numerous other courts have similarly explained why Defendant's argument is wrong:

| **Case Citation** | **Holding** |
|---|---|
| *Mabe v. Wal-Mart Assocs., Inc.*, 2021 WL 1062566, at *6 (N.D.N.Y. Mar. 18, 2021) (emphasis added) | Defendant argues that the Second Department's decision in *IKEA* contradicts *Vega*. The Court disagrees with this argument at this time. In *IKEA,* the Appellate Division determined that the Labor Commissioner's determination, made after a hearing, that an employer violated § 191(1)(a) by paying manual workers bi-weekly instead of weekly, was supported by substantial evidence. *See IKEA*, 241 A.D.2d at 455, 660 N.Y.S.2d at 586 ("The testimony of the petitioner's manager of Human Resources clearly established that the petitioner employed 'manual workers' within the meaning of Labor Law § 190(4), and that the petitioner violated Labor Law § 191(1)(a) by paying wages to those employees pursuant to the petitioner's system-wide bi-weekly payroll scheme, rather than paying them weekly as required by the statute.")(citation omitted). ***IKEA* did not address whether a private right of action existed or the nature of available damages, liquidated or otherwise, that could be imposed for a violation of § 191(1)(a). *IKEA* also did not address the proper statute for the enforcement of a § 191(1)(a) violation.** |
| *Rodrigue v. Lowe's Home Centers, LLC*, 2021 WL 3848268, at *5 (E.D.N.Y. Aug. 27, 2021) (emphasis | Defendants suggest that *Vega* deserves limited weight because the Second Department "challenge[d] *Vega*'s holding" in *IKEA U.S. Inc. v. Indus. Bd. Of Appeals*, 241 A.D.2d 454, 455 (N.Y. App. Div. 1997). Defs.' Memo at 17. **But *Ikea* does not** |

| | |
|---|---|
| added) | **address whether employees may obtain liquidated damages for untimely payments; it simply assessed whether the state Commissioner of Labor had proffered substantial evidence that a particular employer violated Section 191**. *See IKEA U.S. Inc.*, 241 A.D.2d at 455. Nor do defendants grapple with *Vega*'s observation about the parallel FLSA provision addressing liquidated damages; they do not explain why the New York Court of Appeals would give a substantially narrower reading to Section 198(1-a) than the Supreme Court gave to the section's federal counterpart. After all, the Second Circuit has concluded that "there are no meaningful differences" in the wording of the state and federal provisions. *Rana*, 887 F.3d at 123. Because defendants offer no "persuasive evidence that the state's highest court would reach a different conclusion" than the First Department did in *Vega*, I am "bound to apply the law as interpreted by" the intermediate appellate court, *Muhammad*, 595 F.3d at 432. |
| *Day v. Tractor Supply Co.*, 2022 WL 19078129, at *5 (W.D.N.Y. Dec. 1, 2022), *report and recommendation adopted*, 2023 WL 2560907 (W.D.N.Y. Mar. 17, 2023) | TSC argues that no private right of action exists here and that civil penalties imposed by the DOL under NYLL § 218 are the appropriate remedy for violations of § 191. *See IKEA U.S. Inc. v. Indus. Bd. of Appeals*, 241 A.D.2d 454, 455 (2d Dept. 1997) (affirming DOL's imposition of a $100 civil penalty under NYLL 218(1) where employer failed to pay manual workers weekly). … This Court recognizes TSC's concern but nonetheless concludes, as recognized in *Vega*, that liquidated damages are the appropriate remedy for violations of § 191. |
| *Freeland v. Findlay's Tall Timbers Distribution Ctr., LLC*, 2023 WL 4457911, at *9 (W.D.N.Y. July 11, 2023) | The only other state appellate court to have considered this issue, the Appellate Term, Second Department, concluded that because neither the Appellate Division, Second Department nor the Court of Appeals had pronounced a contrary rule, Vega controlled as a matter of stare decisis. *See Phillips v. Max Finkelstein, Inc.*, 73 Misc.3d 1, 153 N.Y.S.3d 750, 750-51 (App. Term 2d Dep't 2021). In doing so, the Appellate Term rejected the assertion that Second Department case law compelled a contrary result, explaining that the case on which the defendant employer relied "merely confirmed the determination of the Commissioner of Labor that an employer's payment frequency constituted a violation of [Section § 191(1)(a)]." Id. at 751 (citing *In re Ikea U.S. Inc. v. Industrial Bd. of Appeals*, 241 A.D.2d 454, 660 N.Y.S.2d 585 (2d Dep't 1997)). |
| *Sorto v. Diversified Maint. Sys., LLC,* 2020 WL 8413553, at *3 (E.D.N.Y. Nov. 15, 2020), *report and* | The *IKEA* court addressed whether there was substantial evidence to support a determination by the Commissioner of Labor under section 191—it did not address whether a private right of action exists. *See id*. This Court disagrees with the |

| | |
|---|---|
| *recommendation adopted*, 2020 WL 7693108 (E.D.N.Y. Dec. 28, 2020) | *Phillips/Kruty* court's reading of *IKEA*, and on this basis declines to follow those decisions. |
| *Mabe v. Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *3 (N.D.N.Y. Mar. 24, 2022) | Indeed, in *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d … the Second Department relied upon *Vega* in finding that a lower court erred in dismissing a claim similar to that alleged in the First Cause of Action. *Id.* at 2-4. In doing so, the *Phillips* Court rejected an argument, like that previously raised by Defendant here, that *Matter of IKEA U.S. Inc. v. Industrial Bd. of Appeals*, 241 A.D.2d 454, 660 N.Y.S.2d 585 (N.Y. App. Div., 2nd Dept., 1997), represents a holding contrary to *Vega. See id.* at 3-4. |
| *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *3 (E.D.N.Y. Sept. 27, 2021), *motion to certify appeal denied*, 2021 WL 6805889 (E.D.N.Y. Dec. 22, 2021) | But the Second Department decision in question—*IKEA U.S. Inc. v. Indus. Bd. Of Appeals*, 241 A.D.2d 454 (N.Y. App. Div. 1997)—simply assessed whether the state Commissioner of Labor had proffered substantial evidence that a particular employer violated Section 191. *Id.* at 455. It did not controvert the explicit holding of *Vega*. |
| *Phillips v. Max Finkelstein, Inc.*, 73 Misc. 3d 1, 3 (N.Y. App. Term. 2021) (2d Dep't) | Defendants contend that, in *Matter of IKEA U.S. Inc. v. Industrial Bd. of Appeals,* 241 A.D.2d 454, 660 N.Y.S.2d 585 (1997), the Appellate Division, Second Department, reached a contrary result with respect to a manual worker's private right to sue based on his or her employer's payment of wages less frequently than on a weekly basis. However, unlike *Vega*, which, like the case at bar, arose from a plenary action for damages, in *IKEA*, the Second Department merely confirmed the determination of the Commissioner of Labor that an employer's payment frequency constituted a violation of Labor Law § 191 (1) (a) and the Commissioner's imposition of a penalty on the employer, without addressing the viability of a private cause of action for the same statutory violation. |
| *Beh v. Cmty. Care Companions Inc.,* 2021 WL 3914297, at *3 (W.D.N.Y. Feb. 1, 2021), *report and recommendation adopted*, 2021 WL 3914320 (W.D.N.Y. June 23, 2021) | holding Defendant's reliance on *IKEA* was "insufficient to overcome *Vega.* Neither the Second Department's decision in *IKEA* nor the agency opinion letter expressly address the existence of a private right of action for violations of NYLL § 191, so they are less persuasive than *Vega*, which does." *See also id.* ("Perhaps more importantly, the First Department's interpretation is more consistent with the basic policies that underlie NYLL § 191. Section 191's requirement of weekly payment is intended to protect 'workers who are generally dependent upon their wages for sustenance,' and the purpose of Section 198 is to 'deter abuses and violations of the labor laws.'" *Vega*, 175 A.D.3d at 1146 (internal quotation marks omitted)). |

Defendant offers no basis why this Court should rule differently.

## II. LIQUIDATED DAMAGES UNDER §198(1-A) SERVE IMPORTANT POLICY OBJECTIVES

Liquidated damages under NYLL § 198(a)(1) allow for easy calculation of damages where the calculation of actual damages would otherwise be extremely difficult. Liquidated damages also protect low-income workers in New York, and serve as a deterrent for violation of the law.

### A. Liquidated Damages Were Enacted To Compensate Employees For An Injury Difficult To Calculate

Liquidated damages were enacted because the Legislature recognized that injury from a violation of NYLL § 191 would be difficult to calculate. The Legislative History of Section 198 makes clear that the purpose of the liquidated damages provision of the bill was to "compensate the employee for the loss of the use of the money to which he was entitled." Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 16 of 16). In a section titled "arguments in support of the bill," the Memorandum explains that the bill sought to remedy a scenario where employers "will have had the free use of their employees' money for some time and their employees will have been seriously inconvenienced. **The calculation of interest on the money due would be difficult as it would have accrued in small amounts week by week. This bill follows the example of the Federal Fair Labor Standards Act in providing an easily-calculable formula for liquidated damages**." *Id.*¶ (emphasis added). This shows a legislative intent for the liquidated damages provision to be used as a replacement for calculation of injury. *See also Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) (the "NYLL liquidated damages provisions ... are designed to deter wage-and-hour violations in a manner calculated to compensate the party harmed").

### B. The Harm Experienced By Lack Of Access To Funds For Low-Wage Workers Goes Well Beyond Interest Rates

Failure to make timely payment of wages has dire consequences for the low-income

workers NYLL § 191 was designed to protect. Struggling to make ends meet is a reality for most Americans, and a lack of timely access to wages has given rise to a massive payday loan industry in the United States. According to the Federal Reserve, "[f]orty-six percent of adults say they either could not cover an emergency expense costing $400, or would cover it by selling something or borrowing money." Plaintiffs' Statement of Additional Material Facts, ¶ 4. Prompt access to wages for low-income workers could mean the ability to avoid getting their telephones, electricity, or utilities shut off. Or to avoid going into debt. Or to be able to buy their child a present for their birthday.

This is not a random, meaningless law that the New York State Legislature made up out of nowhere. It has been a respected edict for millennia. *See* Deuteronomy 24:14-15 (English Standard Version) ("You shall not oppress a hired servant who is poor and needy, whether he is one of your brothers or one of the sojourners who are in your land within your towns. You shall give him his wages on the same day, before the sun sets (for he is poor and counts on it), lest he cry against you to the Lord, and you be guilty of sin."). And as the New York Court of Appeals has explained, this law was "intended for the protection of those who are dependent upon their wages for sustenance." *People v. Vetri*, 309 N.Y. 401, 405 (1955). This law "makes some sense, because **even a short delay in paying a lower-income employee's wages can cause severe hardship**." LABOR LAW ARTICLE: 6: A MISUNDERSTOOD LAW THAT FULLY PROTECTS ALL EMPLOYEES WAGES, 80 Alb. L. Rev. 1355 (2016/2017) (emphasis added). These are real people that suffer real-life consequences from Defendant's wage violations.

Perhaps a short-term lack of access to funds may only injure people with adequate cash flow in terms of opportunity cost and the time-value of money. But this law was explicitly passed to protect people that would be *unlikely* to have adequate cash flow. Needless to say, the harm

caused by an inability to put food on the table or buy school supplies for your child goes well-beyond the time-value of money. It is a harm that is intrinsically difficult to quantify as a dollar amount. That is why liquidated damages are necessary in this scenario.

This is not a unique concept. On both federal and state levels, statutory damages have been imposed for harms too complex to quantify. For example, the Telephone Consumer Protection Act provides $500 in statutory damages per spam call, even though the actual "economic" damages of the calls likely only equals a few cents. *See* 47 U.S.C. § 227(b)(3)(B). The Video Privacy Protection Act calls for $2,500 per violation where someone discloses to a third party which videos their subscribers watched – also a number far higher than any economic calculation would reach. *See* 18 U.S.C. § 2710 (c)(2)(A). And so on. The ability of the Legislature to enact these laws in order to protect the public from harms difficult to quantify with a traditional economic model is well enshrined in American Jurisprudence. As the United States Supreme Court explained, the Legislature is empowered to provide an injured party "some recompense for injury done him, in a case where the rules of law render difficult or impossible proof of damages or discovery of profits." *Douglas v. Cunningham*, 294 U.S. 207, 209 (1935).

### C. Liquidated Damages Were Also Intended To Serve As A Deterrent To Future Misconduct

Finally, liquidated damages were also intended to deter future violations of NYLL § 191. In fact, when the statute was originally passed in 1967, it set the amount of liquidated damages at 25%. Even then, there were detractors. As the Bill Jacket notes, "[s]ome persons may claim that the imposition of liquidated damages is unreasonable." Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 5 of 16). However, the liquidated damages provision was passed anyway in the hopes that it "would establish one more safeguards to assure employees or proper payment of wages under the law and would thus be a deterrent

against abuses and violations." *Id.* at 13.

Then, the statute was amended in 2011 to raise the amount of liquidated damages from 25% to 100%. *See Granados v. Traffic Bar & Rest., Inc.*, 2016 WL 7410725, at *4 (S.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 2017 WL 1184277 (S.D.N.Y. Mar. 29, 2017) (citing N.Y. Bill Jacket, 2010 S.B. 8380 ch. 564, at 8). The Legislature explained that the 25% "penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent" and that raising the number to 100% was needed to "better protect workers' rights and interests." N.Y. Bill Jacket, 2010 S.B. 8380 ch. 564, at 8.

This extra "safeguard" continues to be sorely needed. To state the obvious: getting sued for liquidated damages was the only reason Sephora came into compliance with the law. If damages were either $0, or merely limited to the time-value of money, no lawyers would have taken up the case to enforce workers' rights. And even if they had, Sephora would have paid them the pennies owed for interest accrued and continued its misconduct.

If Sephora complains that the penalty is extreme, that is because the Legislature intended for it to be so.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motion for Summary Judgment.

Dated: December 1, 2023

**BURSOR & FISHER, P.A.**

*/s/ Yitzchak Kopel*

Yitzchak Kopel
Alec M. Leslie
1330 Avenue of the Americas
New York, NY 10019

Telephone: (646) 837-7150
Facsimile: (212) 989-9163
ykopel@bursor.com
aleslie@bursor.com

*Attorneys for Plaintiffs*