**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROSALBA ESPINAL and JUAN RIVERA, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>     v.<br><br>SEPHORA USA, INC.,<br><br>                  Defendant. | Case No. 1:22-cv-03034-PAE-GWG |

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

**TABLE OF CONTENTS**

**PAGE(S)**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

I.    THE COURT OF APPEALS IS LIKELY TO UPHOLD *VEGA* AND
      REJECT *GRANT*............................................................................................ 2

      A.    Five District Courts Who Have Ruled Post-*Grant* Have Held The
            Court Of Appeals Would Side With *Vega* ................................................ 3

      B.    NYLL §§ 197 And 218 Do Not Address Violations Of NYLL §
            191.............................................................................................................. 5

      C.    50+ Federal Courts To Follow *Vega* Did Not Merely Do So With
            "Skepticism" or "Reservation" ................................................................ 6

      D.    Judge Briccetti Denied Defendant's Motion For Interlocutory
            Appeal in *Zachary*, Despite The Split In Authority, Further
            Indicating That *Grant* Is Incorrect ........................................................ 8

      E.    Defendant's "Legislative Developments" Argument Makes No
            Sense .......................................................................................................... 9

II.   *GRANT* IS INCORRECT FOR ADDITIONAL REASONS .............................. 9

      A.    Wages Become "Unpaid" If Not Paid When They Are Due –
            Otherwise There Is No Way To Distinguish Because Late And
            Unpaid Wages ............................................................................................ 9

      B.    *Grant* Constituted Legal Error By Giving Credence To An Illegal
            Contract ...................................................................................................... 11

      C.    Legislative Memoranda From 1966 And 1967 Show An Intent To
            Create A Private Right Of Action With Liquidated Damages From
            Late Payment Of Wages ............................................................................ 13

      D.    The New York Department of Labor Has Explicitly Held That A
            Private Right Of Action Exists .................................................................. 15

      E.    The "No Wage Theft Loophole Act of 2021" Shows The New
            York Legislature's Support For *Vega*'s Interpretation Of NYLL §
            198.............................................................................................................. 16

III.  THERE IS AN IMPLIED PRIVATE RIGHT OF ACTION FOR
      VIOLATIONS OF NYLL § 191........................................................................ 17

IV.   IN THE ALTERNATIVE, THE COURT MAY ELECT TO STAY
      PROCEEDINGS PENDING THE COURT OF APPEALS' POTENTIAL
      REVIEW OF *GRANT* .................................................................................... 18

CONCLUSION ................................................................................................................. 18

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Barrentine v. Arkansas-Best Freight System, Inc.*,
    450 U.S. 728 (1981) .................................................................................................. 18

*Bazinett v. Pregis LLC*,
    2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024) ................................................ passim

*Biggs v. Wilson*,
    1 F.3d 1537 (9th Cir. 1993) ......................................................................... 15, 16, 17

*Brooks v. Village of Ridgefield Park*,
    185 F.3d 130 (3d Cir. 1999) ..................................................................................... 16

*Brooks v. Village of Ridgefield Park*,
    978 F. Supp. 613 (D.N.J. 1997) ............................................................................... 16

*Caul v. Petco Animal Supplies, Inc.*,
    2021 WL 4407856 (E.D.N.Y. Sept. 27, 2021) ........................................................ 13

*Davis v. Banana Republic LLC*,
    2023 WL 5969597 (E.D.N.Y. Sept. 14, 2023) ........................................................ 11

*Day v. Tractor Supply Co.*,
    2022 WL 19078129 (W.D.N.Y. Dec. 1, 2022) ............................................ 10, 12, 16

*DiBella v. Hopkins*,
    403 F.3d 102 (2d Cir. 2005) ....................................................................................... 4

*Galante v. Watermark Servs. IV, LLC*,
    2024 WL 989704 (W.D.N.Y. Mar. 7, 2024) .................................................. 7, 8, 14

*Gamboa v. Regeneron Pharms., Inc.*,
    2024 WL 815253 (S.D.N.Y. Feb. 27, 2024) ................................................... passim

*Garcia v. Skechers USA Retail, LLC*,
    2024 WL 1142316 (E.D.N.Y. Mar. 15, 2024) .......................................... 3, 7, 17, 21

*Gottlieb v. Kenneth D. Laub & Co., Inc.*,
    82 N.Y.2d 457 (1993) ................................................................................................. 9

*Granados v. Traffic Bar & Rest., Inc.*,
    2016 WL 7410725 (S.D.N.Y. Dec. 21, 2016) ......................................................... 20

*Grant v. Global Aircraft Dispatch, Inc.*,
  2024 WL 172900 (2d Dep't Jan. 17, 2024) ............................................................. 1, 17, 18, 22

*Konkur v. Utica Academy of Science Charter Sch.*,
  38 N.Y.3d 38 (2022) .............................................................................................................. 23

*Krawitz v. Five Below, Inc.*,
  2023 WL 6385711 (E.D.N.Y. Sept. 29, 2023) ........................................................................ 11

*Mabe v. Wal-Mart Associates, Inc.*,
  2022 WL 874311 (N.D.N.Y. Mar, 24, 2022) .......................................................................... 10

*Mabe v. Wal-Mart Assocs., Inc.*,
  2021 WL 1062566 (N.D.N.Y. Mar. 18, 2021) ........................................................................ 10

*Martin v. United States*,
  117 Fed. Cl. (2014) ................................................................................................................ 17

*Michalski v. Home Depot, Inc.*,
  225 F.3d 113 (2d Cir. 2000) ..................................................................................................... 5

*Moran Towing & Transp. Co. v. N.Y. State Tax Com.*,
  72 N.Y.2d 166 (1988) ............................................................................................................. 22

*People v. Grass*,
  257 A.D. 1 (1st Dep't 1939) .............................................................................................. 18, 21

*People v. Robinson*,
  95 N.Y.2d 179 (2000) ............................................................................................................. 22

*Petrosino v. Fastenal Co.*,
  2023 WL 3496362 (N.D.N.Y. May 17, 2023) ........................................................................ 12

*Phillips v. Max Finkelstein, Inc.*,
  73 Misc. 3d 1 (2d. Dept. 2021) ...................................................................................... 8, 9, 11

*Rankine v. Levi Strauss & Co.*,
  2023 WL 3582323 (S.D.N.Y. May 22, 2023) .................................................................. 11, 24

*Rath v. Jo-Ann Stores, LLC*,
  2022 WL 17324842 (W.D.N.Y. Nov. 29, 2022) ..................................................................... 12

*Rosario v. Icon Burger Acquisition LLC*,
  2022 WL 17553319 (E.D.N.Y. Dec. 9, 2022) ........................................................................ 23

*Sarmiento v. Flagge Contr. Inc.*,
  2024 WL 806137 (S.D.N.Y. Feb. 27, 2024) ......................................................................... 2, 6

*Sav. Bank v. O'Neil,*
  324 U.S. 697 (1945) ................................................................................................. 16

*Tenn. Coal, Iron & R. Co. v. Musoda Local No. 123,*
  321 U.S. 590 (1944) ................................................................................................. 18

*Truelove v. Northeast Capital & Advisory,*
  95 N.Y.2d 220 (2000) ................................................................................................ 9

*Urena v. Sonder USA Inc.,*
  2024 WL 989593 (S.D.N.Y. Mar. 7, 2024) .............................................................. 24

*V.S. v. Muhammad,*
  595 F.3d 426 (2d Cir. 2010) ...................................................................................... 4

*Vega v. CM and Associates Construction Management, LLC,*
  175 A.D. 3d 1144 (2019) ........................................................................................... 19

*Zachary v. BG Retail, LLC,*
  2024 WL 554174 (S.D.N.Y. Feb. 12, 2024) ................................................... passim

## OTHER AUTHORITIES

2010 S.B. 8380 ............................................................................................................ 20, 21

## INTRODUCTION

Following the Court's February 1, 2024 Order (ECF. No. 73), Defendant has moved to dismiss Plaintiffs' First Amended Complaint (hereinafter, the "MTD") (ECF. No. 76) based on the Second Department's decision in *Grant v. Global Aircraft Dispatch, Inc.*, 2024 WL 172900 (2d Dep't Jan. 17, 2024). Ignoring that the score at the Appellate level is 6 to 3 in favor of *Vega*—and that over 50 courts to analyze *Vega* have expressly agreed with its rationale—Defendant asks the Court "to hold that no private right of action exists for Plaintiffs' NYLL § 191 claim in accordance with *Grant*." MTD at 2.

However, since *Grant* was issued, **five** federal judges to consider *Grant* have expressly disagreed with its reasoning and instead sided with *Vega*. *See Zachary v. BG Retail, LLC*, 2024 WL 554174, at *7 (S.D.N.Y. Feb. 12, 2024) (Briccetti, J.) ("the reasoning in *Vega* and the dissent in *Grant* persuade the Court that the Court of Appeals would likely agree with *Vega* and reject *Grant*"); *Gamboa v. Regeneron Pharms., Inc.*, 2024 WL 815253, at *6 (S.D.N.Y. Feb. 27, 2024) (Karas, J.) ("This Court finds no reason to deviate from *Zachary*'s well-reasoned analysis and thus concludes that the Court of Appeals is likely to apply *Vega*'s reasoning over *Grant*'s in resolving this issue."); *Sarmiento v. Flagge Contr. Inc.*, 2024 WL 806137, at *10 (S.D.N.Y. Feb. 27, 2024) (Cott, M.J.) (Report and Recommendation) ("[T]he Court recommends an award of liquidated damages for late payments, consistent with the First Department's decision in *Vega*. This recommendation accords with a recent decision in this District, in which a claim for liquidated damages for late payments was allowed to proceed as 'the loss of money owed to plaintiff [was] not a harm that might occur, but one that has occurred.'") (citing *Zachary*, 2024 WL 554174, at *3)[1]; *Bazinett v. Pregis LLC*, --- F. Supp. 3d ----, 2024 WL 1116287, at *9 (N.D.N.Y. Mar. 14,

---

[1] The deadline to object to Judge Cott's Report & Recommendation was March 12, 2024. None were submitted.

2024) ("the Court concludes that the *Grant* majority and the few district court cases questioning *Vega* are not persuasive enough evidence to reject the present coalition of cases upholding *Vega*.") (D'Agostino, J.); *Garcia v. Skechers USA Retail, LLC*, 2024 WL 1142316, at *6 (E.D.N.Y. Mar. 15, 2024) (Chen, J.) ("the Court is persuaded by the analysis in *Zachary* and *Gamboa*, and reaches the same conclusion here.").

What is more, the defendants in *Zachary* and *Bazinett* are represented by the same counsel as Defendant is here. Defendant's arguments here are repeats of the briefing submitted in those cases. *See* Kopel Decl., Exs. A and B, respectively. Faced with identical arguments, the Court here should reach the same outcomes as in *Zachary* and *Bazinett*.

In sum, Defendant's arguments "against *Vega*'s reasoning" are "unavailing," as "[n]umerous courts have already considered and rejected them." *Gamboa v. Regeneron Pharms., Inc.*, 2024 WL 815253, at *6 (S.D.N.Y. Feb. 27, 2024). Accordingly, and for the reasons stated herein, this Court should join "nearly every other district court in the Second Circuit in adopting *Vega*'s approach and den[y] Defendant's Motion[.]" *Id.*

## ARGUMENT

## I.    THE COURT OF APPEALS IS LIKELY TO UPHOLD *VEGA* AND REJECT *GRANT*

As the New York Court of Appeals has still not opined on these issues, "this Court's task is to predict how the [Court of Appeals] would resolve the uncertainty or ambiguity from the conflicting appellate decisions." *Gamboa*, 2024 WL 815253, at *5. In doing so, the federal court "is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *V.S. v. Muhammad*, 595 F.3d 426, 432 (2d Cir. 2010).

In analyzing persuasive evidence, this Court must consider sources the "state's highest court might rely upon in deciding the question." *DiBella v. Hopkins*, 403 F.3d 102, 112 (2d Cir. 2005) (relying on *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000)). This includes attempting "to identify what other courts think about this issue, because this thinking would undoubtedly be taken into account by the New York Court of Appeals if and when it squarely confronts the issue." *Id*.

Defendant again claims that "*Grant* restores the pre-*Vega* status quo established by New York state and federal courts that consistently held for decades that no private right of action exists under NYLL." MTD at 1. However, as discussed *infra*, courts pre-*Vega*, post-*Vega*, and post-*Grant* have all found a private right of action to exist. For these reasons, Plaintiffs respectfully submit the Court of Appeals will hold the same, and dismissal is therefore inappropriate.

### A.   Five District Courts Who Have Ruled Post-*Grant* Have Held The Court Of Appeals Would Side With *Vega*

District courts in the Second Circuit have been faced with the same task this Court now faces—predicting whether the Court of Appeals will side with *Vega* or side with *Grant*. In evaluating both decisions, five of six federal courts have held that the Court of Appeals will reject *Grant* and uphold *Vega*.

| | |
|---|---|
| *Zachary v. BG Retail, LLC*, 2024 WL 554174 (S.D.N.Y. Feb. 12, 2024) | "[T]he reasoning in *Vega* and the dissent in *Grant* persuade the Court that the Court of Appeals would likely agree with *Vega* and reject *Grant*." *Id*. at *7. "[T]his Court agrees with *Vega* that a late wage claim under Section 191 is privately actionable even if that right is not expressly codified in the NYLL." *Id*. at *8. "[T]his Court's interpretation of the applicable legislative history supports the outcome reached in *Vega*." *Id*. at *8. |
| *Gamboa v. Regeneron Pharms., Inc.*, 2024 WL | "This Court finds no reason to deviate from *Zachary*'s well-reasoned analysis and thus concludes that the Court of Appeals is |

| | |
|---|---|
| 815253 (S.D.N.Y. Feb. 27, 2024) | likely to apply *Vega*'s reasoning over *Grant*'s in resolving this issue." *Id.* at *6.<br><br>"Moreover, Defendant's other arguments against *Vega*'s reasoning [] are unavailing. Numerous courts have already considered and rejected them." *Id.* at *6 (cleaned up).<br><br>"[T]his Court joins every other district court in the Second Circuit in adopting *Vega*'s approach." *Id.* at *6. |
| *Sarmiento v. Flagge Contracting Inc.,* 2024 WL 806137 (S.D.N.Y. Feb. 27, 2024) | "The *Zachary* court carefully analyzed the decisions in *Vega* and *Grant* and, in agreeing with *Vega*, concluded that a late wage claim under Section 191 is privately actionable 'even if that right is not expressly codified in the NYLL.' To the extent it is necessary to reach that question, I agree with the court's analysis in *Zachary* and recommend it be followed here." *Id.* at *9. |
| *Bazinett v. Pregis LLC,* --- F. Supp. 3d ----, 2024 WL 1116287 (N.D.N.Y. Mar. 14, 2024) | "[B]ased on the reasoning set forth by the vast majority of Courts to continue to follow *Vega,* even in light of *Konkur,* and the dissent in *Grant,* **the Court concludes that the *Grant* majority and the few district court cases questioning *Vega* are not persuasive enough evidence to reject the present coalition of cases upholding *Vega*.** The Court predicts that based on the current legal landscape, the New York Court of Appeals would accept *Vega*." *Id.* at *9. |
| *Garcia v. Skechers USA Retail, LLC,* 2024 WL 1142316 (E.D.N.Y. Mar. 15, 2024). | "Since *Grant,* several other courts in the Second Circuit have addressed the question of whether Section 191 confers a private right of action, most of which have concluded that the New York Court of Appeals would likely agree with *Vega*… The Court is persuaded by the analysis in *Zachary* and *Gamboa,* and reaches the same conclusion here." *Id.* at *6 (cleaned up). |

Defendant argues that "the analysis in *Grant* is thorough" because it had "the benefit of considering the reasoning of *Vega* and outright rejected it." MTD at 11-10. But the above courts had the benefit of considering both *Vega* and *Grant,* and concluded *Vega* to be the better reasoned decision.[2]

---

[2] The lone decision agreeing with *Grant* is *Galante v. Watermark Servs. IV, LLC,* 2024 WL 989704 (W.D.N.Y. Mar. 7, 2024). However, the *Bazinett* and *Garcia* courts considered *Galante* and still sided with *Vega*. The *Zachary* court also sided with *Vega* despite being made aware of the *Galante*

## B.      NYLL §§ 197 And 218 Do Not Address Violations Of NYLL § 191

Defendant claims "it was understood that any penalty for untimely wages was to be assessed solely by the Commissioner pursuant to §§ 197 or 218." This argument has been rejected numerous times. For instance, in *Phillips v. Max Finkelstein, Inc.,* 73 Misc. 3d 1 (2d. Dept. 2021), the court found that "[a]lthough section 218 authorizes the Commissioner to impose civil penalties for violations of article six of the Labor Law, <u>it does not preclude private causes of action</u>." 73 Misc. 3d, at 3-4 (emphasis added). "Labor Law § 198, which authorizes the Commissioner to bring 'any legal action necessary' on behalf of 'any employee paid less than the wage to which he or she is entitled' [] also specifically authorizes wage claims by employees, and states that the remedies provided by article 6 of the Labor Law 'may be enforced simultaneously or consecutively so far as not inconsistent with each other.'" *Id.* at 4 (internal citations omitted).

Defendant does not argue that a private right of action is not available pursuant to Article 6 of the NYLL, which covers Plaintiffs' instant claim. *See Gottlieb v. Kenneth D. Laub & Co., Inc.*, 82 N.Y.2d 457 at 461 (1993) ("the statutory provision in [NYLL] article 6 which generally regulates payment of wages by employers and creates reciprocal rights of employees is Labor Law § 191"); *Truelove v. Northeast Capital & Advisory*, 95 N.Y.2d 220, 224-225 (2000) ("an employer [is] subject to both civil and criminal liability for failing to pay 'wages' as required by [NYLL § 191]").

Moreover, there is no conflict between Section 198 and Section 218. *See* NYLL § 218(4) ("…the civil penalty provided for in this section shall be in addition to and may be imposed concurrently with any other remedy or penalty provided for in this chapter"); NYLL § 198(2)

---

decision. *See infra* § I.D; *see also* Ex. C to Kopel Decl., at 6:15-7:18. Moreover, it does not appear the *Galante* court considered the prior recent decisions siding with *Vega* over *Grant*.

("…the remedies provided by this article may be enforced simultaneously or consecutively so far as not inconsistent with each other").

Accordingly, the existence of a regulatory mechanism does not eliminate the structure of Article 6, which permits employees to privately enforce wage claims. Section 198(1-a) "provides for an express private right of action for underpayment of wages." *Mabe v. Wal-Mart Associates, Inc.*, 2022 WL 874311, at *6 (N.D.N.Y. Mar, 24, 2022); *see also Mabe v. Wal-Mart Assocs., Inc.*, 2021 WL 1062566, at *2 (N.D.N.Y. Mar. 18, 2021) (rejecting argument "that the New York State Legislature vested exclusive responsibility to police violations of this provision in the Commissioner of the Department of Labor."); *Day v. Tractor Supply Co.*, 2022 WL 19078129, at *5 (W.D.N.Y. Dec. 1, 2022), *report and recommendation adopted*, 2023 WL 2560907 (W.D.N.Y. Mar. 17, 2023) (rejecting argument "that civil penalties imposed by the DOL under NYLL § 218 are the appropriate remedy for violations of § 191"); *Rankine v. Levi Strauss & Co.*, 2023 WL 3582323, at *6 (S.D.N.Y. May 22, 2023) (rejecting argument "that *Vega* is inconsistent with enforcement schemes for violations of the NYLL").

### C.    50+ Federal Courts To Follow *Vega* Did Not Merely Do So With "Skepticism" or "Reservation"

Defendant's contention that "[n]early every federal court to follow Vega seemingly has done so with reservation and skepticism, MTD at 6, is blatantly false. *See also id.* at 10 (same). Out of **over 50 courts** to agree with *Vega*, Defendant identified three opinions (admittedly, two from this Court) that expressed any doubt over *Vega*'s correctness. To the contrary, the vast majority of federal courts adopted *Vega*'s holding because they agreed *Vega* makes sense. "To suggest the Court might 'blindly' follow *Vega* ignores the countless other federal courts in this Circuit that have weighed the same arguments and found that *Vega* supports a private right of action." *Krawitz v. Five Below, Inc.*, 2023 WL 6385711, at *2 (E.D.N.Y. Sept. 29, 2023); *Davis*

*v. Banana Republic LLC*, 2023 WL 5969597, at *8 (E.D.N.Y. Sept. 14, 2023) (adopting R&R holding, "the *Vega* Court's textual analysis of NYLL §§ 191 and 198(1-a) ... [is] a reasonable interpretation of the statutes."); *Petrosino v. Fastenal Co.*, 2023 WL 3496362, at *6 (N.D.N.Y. May 17, 2023) ("[T]he Court disagrees with Defendant's assertions that *Vega* was wrongly decided, should be revisited, and that there is no express private right of action under NYLL § 191."); *Rath v. Jo-Ann Stores, LLC*, 2022 WL 17324842, at *7 (W.D.N.Y. Nov. 29, 2022) ("[I]t is the combination of sections 191 and 198(1-a) that creates an express private right of action for untimely wage payments. Section 191 creates the substantive right for the manual employee to timely and complete wage payments and § 198(1-a) furnishes the procedures and remedies available for violations."); *Day v. Tractor Supply Co.*, 2022 WL 19078129, at *7 (W.D.N.Y. Dec. 1, 2022), *report and recommendation adopted*, 2023 WL 2560907 (W.D.N.Y. Mar. 17, 2023) (citing amendments to § 198(1-a) to conclude, "as recognized in *Vega* … liquidated damages are the appropriate remedy for violations of § 191."); *Caul v. Petco Animal Supplies, Inc.*, 2021 WL 4407856, at *3 (E.D.N.Y. Sept. 27, 2021) ("*Vega* addressed those general concerns, finding that the purposes of Sections 191 and 198 are to protect employees who are "dependent upon their wages for sustenance" and deter labor law violations.").

Notably, the Defendant in *Bazinett*—represented by the same counsel as Defendant—raised these same arguments, pointing to the same court transcripts.  MTD at 10-11; *see also* Kopel Decl., Ex. B at 6.  Judge D'Agostino held, "[t]his evidence is not sufficiently 'persuasive evidence' to convince the Court that the New York Court of Appeals would reject *Vega*.  First and foremost, a judge's commentary on a legal issue during a court conference is neither binding nor persuasive.  Second, although [d]efendant is correct that there have been cases disagreeing with *Vega*, those cases are far fewer than the cases agreeing with *Vega*."  *Bazinett*, 2024 WL 1116287, at *8.

### D. Judge Briccetti Denied Defendant's Motion For Interlocutory Appeal in *Zachary*, Despite The Split In Authority, Further Indicating That *Grant* Is Incorrect

Defendant's counsel here is the same defense counsel in *Zachary*.  Thus, Defendant's exact arguments were considered and rejected by the *Zachary* court.  *See* Kopel Decl., Ex. A.  After the defendant's motion to dismiss was denied, the defendant in *Zachary* sought interlocutory appeal.  Judge Briccetti explained as follows:

THE COURT:        So, in my view, first of all, I don't believe there a substantial ground for a difference of opinion because every federal court, including this one, to consider the question has agreed with Vega, the First Department decision from I believe 2019, 2020. … Every federal court since Vega has agreed with Vega, every single one, including after the Grant decision, which was decided in January. So, after Grant, I decided my case.

I believe it was Judge Karas who decided the Gamboa case, G-A-M-B-O-A, which is 2024 WL 815253, and he agreed with me and agreed that the likelihood is that the New York State Court of Appeals would agree with Vega, which is what I have to do. Basically I'm being called upon to predict what the Court of Appeals will do and I predicted it. I'm not saying that the defendant's argument is frivolous. It certainly is not frivolous, but, you know, I have to pick one position or the other and I looked at it carefully and solicited additional briefing from counsel and, at the end of the day, I decided that Grant is wrong and Vega is right, or, more particularly, that the likelihood is that the New York State Court of Appeals will agree with Vega, not Grant. Judge Karas came to the same conclusion in the Gamboa case.

Ex. C, at 4:15-5:14.[3]

Even after the defendant's counsel pointed out that the *Galante* case followed *Grant*, Judge Briccetti said, "I appreciate that, but, in my opinion, it doesn't change my basic point, which is

---

[3] Defendant's claim that "the *Zachary* court failed to undertake an in-depth analysis of the relevant legal issues" is belied by its reasoned analysis and Judge Briccetti's assertion that he "looked at it carefully."  Ex. C, at 5:7-13.

that **I feel very confident that the New York State Court of Appeals will agree with Vega, not with Grant**. Again, you know, Vega's been analyzed again and again and again." Ex. C, 8:19-9:1 (emphasis added).

###### E.    Defendant's "Legislative Developments" Argument Makes No Sense

Defendant argues that "legislative developments" such as proposals to amend the NYLL should be considered by the Court.  MTD at 11.  That is nonsense.  Proposed legislation is neither a legislative development nor a trend.  It is a complete nullity.  The referenced draft bill has never been scheduled for a vote, and it is unclear if it will ever be voted on.  Even if it does reach a vote, there is no telling what the form of the bill will be, or the result of the vote will be.  There is no reason to believe it will purport to have any retroactive effect or that the Court of Appeals will give that any credence.  Defendant fails to cite a single case in which a court took proposed legislation into account in this manner.  That would be a wildly inappropriate basis for a decision, which is why it has never been done before.

## II.    *GRANT* IS INCORRECT FOR ADDITIONAL REASONS

###### A.    Wages Become "Unpaid" If Not Paid When They Are Due – Otherwise There Is No Way To Distinguish Because Late And Unpaid Wages

*Vega* made an important point:  if wages do not because unpaid once the due date passes, when do they become unpaid?  If a week late is not unpaid, how about 8 days late?  Or a month, or a year?  There is no reasonable place to draw the line other than the actual, statutorily-mandated due date.  The Ninth Circuit recognized this in *Biggs v. Wilson*, 1 F.3d 1537 (9th Cir. 1993):  "[Defendants] urge us to distinguish between late payment and nonpayment, but offer us no principled way to make such a distinction.  We cannot come up with one either… Any kind of sliding scale [] would force employees, employers, and courts alike to guess when 'late payment' becomes 'nonpayment.'"  *Id.* at 1539-1540; *accord Day v. Tractor Supply*, 2022 WL 19078129,

at *6 (W.D.N.Y. Dec. 1, 2022) (citing *Biggs*, noting "both *Vega* and federal district courts have explained that the late payment of wages is tantamount to a non-payment of wages.").

Other courts have also recognized the problem with *Grant*'s reasoning. For example, in *Brooks v. Village of Ridgefield Park*, 978 F. Supp. 613, 617 (D.N.J. 1997), the plaintiff was a K-9 officer in the Village of Ridgefield Police department who challenged the Village's schedule of paying officers' overtime compensation monthly. There was no dispute that the officers had agreed to this payment schedule in their collective bargaining agreement, *see id.* at 617, yet the plaintiff alleged that the delayed payment of overtime wages violated the FLSA. The Court granted summary judgment for the plaintiff, noting:

> [if] an employer is not obligated to compensate an employee for overtime worked during a given week on the regular pay day for that week, this would lead to an ambiguous standard for determining when wages became 'unpaid' under the statute. Employers would then be permitted to withhold overtime compensation for some undefined period of time without incurring any legal liability and employees would be left with no recourse during this delay. Allowing such a delay in the payment of wages would run counter to the primary purpose of the FLSA to "protect certain groups . . . from substandard wages and excessive hours."

*Id.* at 618 (emphasis added, citing *Brook. Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). On appeal, the Third Circuit agreed that the failure to pay overtime "on the regular pay day for the period in which such workweek ends" violates the FLSA. *Brooks v. Village of Ridgefield Park*, 185 F.3d 130, 140 (3d Cir. 1999).

Similarly, in *Biggs*, the plaintiffs were a group of state employees who sued for a two-week delay in the payment of wages caused by a budget impasse. *Biggs*, 1 F.3d at 1539-40. The Ninth Circuit reasoned that wages become "unpaid" if they are not paid when due:

> If a payday has passed without payment, the employer cannot have met his obligation to "pay". . . Unless there is a due date after which minimum wages become unpaid, imposing liability for both unpaid

> minimum wages and liquidated damages would be meaningless.
> The statute must therefore contemplate a time at which § 206 is
> violated, or, put another way, when minimum wages become
> "unpaid." "Unpaid minimum wages" have to be "unpaid" as of some
> distinct point, otherwise courts could not compute either the amount
> of wages which are unpaid, or the additional "equal" amount of
> liquidated damages.

*Id.*

In short, a violation of the FLSA occurs when an employee does not receive overtime on

his or her regular payday. *Martin v. United States*, 117 Fed. Cl. at 620 (2014). "To hold otherwise

would create sufficient uncertainty as to when a violation occurs, and statutory enforcement would

prove unworkable." *Id. Grant* would lead to the same incorrect outcome. *See Zachary*, 2024 WL

554174, at *7 ("the late payment of wages is tantamount to a nonpayment or underpayment of

wages, which permits recovery under Section 198.") (quoting *Grant*, 2024 WL 172900, at *7

(Christopher, J., concurring in part and dissenting in part)); *accord Gamboa*, 2024 WL 815253, at

*5 (same); *Garcia*, 2024 WL 1142316 at *6 (same); *Bazinett*, 2024 WL 1116287, at *9 ("[i]f an

employee is not paid any money on the date required by law, he or she was paid below the required

amount and was, therefore, underpaid.").

## B.    *Grant* Constituted Legal Error By Giving Credence To An Illegal Contract

The *Grant* decision addressed this problem by reasoning that a payment would only

become unpaid if it had not been paid on the schedule set by the employer's admitted illegal

contract with its employees. *See* 223 A.D.3d 712, 716 (2d Dep't 2024) ("where an employer uses

a regular biweekly pay schedule, that employer's payment of wages is due, under the employment

agreement between the employer and an employee, every two weeks. Such an agreed-upon pay

schedule between an employer and a manual worker violates the frequency of payments

requirement (*see* Labor Law § 191[2]), but is not equivalent, in our view, with a nonpayment or

underpayment of wages subject to collection with an additional assessment of liquidated

damages.").

This error is likely to be remedied by the Court of Appeals, if the *Grant* case goes to Albany. As the *Zachary* court explained:

> **NYLL Section 191(2) provides that "[n]o employee shall be required as a condition of employment to accept wages at periods other than as provided in this section." A judge's belief that a manual worker should be able to agree to a different payment schedule, and that such agreement should obviate an employer's liability for failing to comply with the law, does not override an overt legislative judgment to the contrary**.

*Id.* at *8 (emphasis added).

Not only is such a contractual arrangement expressly prohibited by the NYLL, but it has also been denounced by numerous courts, including the Supreme Court. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 740 (1981) (holding wage laws "cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate."); *People v. Grass*, 257 A.D. 1, 3 (1st Dep't 1939) ("Contracts in contravention of this provision of the Labor Law are illegal and void."); *Tenn. Coal, Iron & R. Co. v. Musoda Local No. 123*, 321 U.S. 590, 602-03 (1944) ("Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights.").

Although the *Grant* court conceded that the plaintiff was deprived of his statutory rights, it nonetheless held that he was without remedy on the basis of a contract to abridge those very rights. This is a very slippery slope. This reasoning could easily be extended to permit employers to enter into agreements to pay manual workers monthly, semiannually, or yearly. Indeed, it could be applied to *any* scenario that was intended to be covered by NYLL § 198, as long as the offending employer strong-armed its employees into an agreement.

**C.    Legislative Memoranda From 1966 And 1967 Show An Intent To Create A Private Right Of Action With Liquidated Damages From Late Payment Of Wages**

NYLL § 198(1-a) expressly provides a private right of action for any "wage claim" in Article Six. In *Vega*, the First Department noted the obvious: late payment of wages is a type of wage claim. *Vega*, 175 A.D. 3d at 1145 ("contrary to defendant's argument that § 198 provides remedies only in the event of nonpayment or partial payment of wages (but not in the event of late payment of wages, the plain language of the statute indicates that individuals may bring suit for any 'wage claim' against an employer")). This was also acknowledged by the courts in *Zachary*, *Gamboa*, *Bazinett*, and *Garcia*. The legislative comments to the Labor Law show that *Vega* (and its progeny) was right: claims for untimely payment under NYLL § 191 are the precise sort of "wage claims" intended to be covered by NYLL § 198 (1-a).

Defendant argues that "*Grant* reflects a reading of New York law as it was intended by the state legislature." MTD at 9. But that is wrong. In 1966, the New York Legislature passed a bill repealing the previous iteration of Article Six and substituting new language which provides the basis for the current law in place today. A memorandum accompanying the bill explained that "[t]he bill clarifies the application of the <u>wage payment provisions</u> for manual workers" by "indicat[ing] that weekly payment of wages applies to manual workers, except those employed by a non-profit organization." Docket No. 24-6, Memorandum of the Industrial Commissioner, June 3, 1966, Bill Jacket, L 1966, ch. 548 (pp. 4 of 12) (emphasis added).

Indeed, in 1967, the Legislature enacted Section 198, allowing for a private cause of action with a liquidated damages provision. According to the memorandum accompanying the bill, its purpose was "[t]o assist the enforcement of the wage payment … laws by imposing greater sanctions on employers for violation of those laws." Docket No. 24-7, Memorandum of the Industrial Commissioner, April 5, 1967, Bill Jacket, L 1967, ch. 310 (pp. 6 of 16). Again,

13

Defendant has argued that a frequency of pay violation is not a "wage claim."  But it seems clear that this statute meant to cover "wage payment laws" was intended to encompass the "wage payment provisions" from one year earlier.

Accordingly, the Legislature explained its intentions clearly at the time it passed the statutes that it was creating a private right of action for liquidated damages specifically to "compensate the employee for the loss of the use of the money to which he was entitled."  Docket No. 24-7, 5 of 16.  Thus, there is every reason to believe that this was intended to apply to Section 191, which addresses late payments to employees.

Furthermore, the 1967 Memorandum states that the bill was meant to "follow[] the example of the Federal Fair Labor Standards Act in providing an easily-calculable formula for liquidated damages."  Docket No. 24-7, 6 of 16.  This supports the First Department's reference to the FLSA in interpreting the statute in *Vega*.  In fact, when the statute was originally passed in 1967, it set the amount of liquidated damages at 25%.  Even then, there were detractors.  As the Bill Jacket notes, "[s]ome persons may claim that the imposition of liquidated damages is unreasonable."  *Id.* However, the liquidated damages provision was passed anyway in the hopes that it "would establish one more safeguards to assure employees or proper payment of wages under the law and would thus be a deterrent against abuses and violations."  *Id.*

Lastly, the statute was amended in 2010 to raise the amount of liquidated damages from 25% to 100%.  *See Granados v. Traffic Bar & Rest., Inc.*, 2016 WL 7410725, at *4 (S.D.N.Y. Dec. 21, 2016), *report and recommendation adopted*, 2017 WL 1184277 (S.D.N.Y. Mar. 29, 2017) (citing N.Y. Bill Jacket, 2010 S.B. 8380 ch. 564, at 8).  The Legislature explained that the 25% "penalties currently in place for employers paying less than minimum wage are minimal and offer little deterrent" and that raising the number to 100% was needed to "better protect workers' rights

14

and interests."  N.Y. Bill Jacket, 2010 S.B. 8380 ch. 564, at 8.  This is all in line with *Vega*'s

reasoning that violation of §191's provisions give rise to a private cause of action for liquidated

damages.  *See Zachary*, 2024 WL 554174, at *8 ("In addition, the stated legislative purposes of

the 2010 amendments—i.e., to enhance penalties for wage theft and benefit low-wage workers

struggling to support their families—are unquestionably better served by a private right to enforce

Section 191 than by requiring injured employees to submit administrative complaints and hope for

an official enforcement action."); *Garcia*, 2024 WL 1142316, at *6 ("Despite *Grant*'s contrary

assertion, the legislative history also supports this interpretation.").

### D.    The New York Department of Labor Has Explicitly Held That A Private Right Of Action Exists

In an October 28, 2010 Opinion Letter, the New York DOL reiterated that NYLL § 191 is

enforceable by a private right of action.  *See* Docket No. 24-8, RO-10-0003.  In response to the

employer's question as to whether employees may be required to "sign-off" on their timesheets,

the Department of Labor responded that:

> Section 191 of the Labor Law requires the timely payment in full of
> an employee's agreed upon wages and sets forth the frequency of
> such payments for particular categories of employees.  For example,
> manual workers must be paid weekly and not later than seven days
> after the end of the week in which their wages are earned ….  While
> an employer can require an employee to sign off on their weekly
> timesheet, the employee's signature on a weekly timesheet, the
> employee's signature on a weekly timesheet neither relieves the
> employer of its obligations under []Section [191], **nor does it
> prevent an employee from filing a complaint with this
> Department or bringing an action for a violation of [NYLL §
> 191.]**"

*Id*. at 4 (emphasis added).  Thus, it is the view of New York's DOL that employees are empowered

to bring private suits for violations of NYLL § 191.

The "[i]nterpretation of a statute by the agency charged with its enforcement is, as a

general matter, given great weight and judicial deference so long as the interpretation is neither

irrational, unreasonable nor inconsistent with the governing statute." *Moran Towing & Transp. Co. v. N.Y. State Tax Com.*, 72 N.Y.2d 166, 173 (1988). Therefore, the DOL's opinion letter represents the agency's interpretation of NYLL § 191 and should be given judicial deference.

**E.    The "No Wage Theft Loophole Act of 2021" Shows The New York Legislature's Support For *Vega*'s Interpretation Of NYLL § 198**

In 2021, New York signed a bill into law amending Article 6 of the New York Labor Law, and in particular, Section 198. L. 2021, c. 397. Indeed, the purpose of the Act was to provide "clari[t]y for the courts once and for all" in their analysis of the statute. *Id.*

By the time the Act was passed, *Vega*'s holding was widely accepted. "[I]n amending the statute … the Legislature was presumably aware of all existing decisions interpreting it." *People v. Robinson*, 95 N.Y.2d 179, 184 (2000) (citation omitted). Those myriad decisions followed *Vega* when construing section 191. "That the Legislature chose not to narrow the statutory language [when Article 6 was amended in 2021] despite these decisions evinces an intent to apply the statute as written." *Robinson*, 95 N.Y.2d at 184 (citation omitted); *see also Zachary*, 2024 WL 554174, at *8 ("Moreover, this Court's interpretation of the applicable legislative history supports the outcome reached in Vega. As the Grant majority acknowledges, money has a real time value, and the 2010 amendments to Section 198 were intended to allow employees 'to recover the full amount of any underpayment.' *Grant*, 2024 WL 172900, at *5. In addition, the stated legislative purposes of the 2010 amendments—i.e., to enhance penalties for wage theft and benefit low-wage workers struggling to support their families—are unquestionably better served by a private right to enforce Section 191 than by requiring injured employees to submit administrative complaints and hope for an official enforcement action.").

## III.    THERE IS AN IMPLIED PRIVATE RIGHT OF ACTION FOR VIOLATIONS OF NYLL § 191

There is no reason to reach the question of whether there is an implied cause of action if the Court agrees that an express cause of action exists.  Even if the Court does not agree that there is an express cause of action, it should still find that there is an implied claim.  *Grant* incorrectly relied on *Konkur v. Utica Academy of Science Charter Sch*., 38 N.Y.3d 38 (2022) to support the proposition that there is not an implied private right of action for violation of NYLL § 191(1)(a).  As Judge Briccetti explained:

> The Grant majority did not dispute that the first and second factor were satisfied when an employee is paid twice monthly in violation of Section 191, but determined, based on Konkur, that creation of an implied private right of action would be inconsistent with the legislative scheme because "multiple official enforcement mechanisms" exist to enforce violations of Section 191.  However, in Konkur, the Court of Appeals distinguished the anti-kickback statute, from which a private right could not be inferred, from the "substantive provisions of Labor Law article 6," like Section 191, which "regulates payment of wages by employers and creates reciprocal rights of employees." Konkur, 38 N.Y.3d at 44, 185 N.E.3d 483. More broadly, the fact that Konkur analyzes a wholly separate provision in the NYLL led several federal courts, prior to Grant, to adhere to Vega and imply a private right of action to address Section    191 violations    notwithstanding Konkur. See, e.g., Rosario v. Icon Burger Acquisition LLC, 2022 WL 17553319, at *5 (E.D.N.Y. Dec. 9, 2022) ("[S]everal district courts within this Circuit have already analyzed this issue and all have concurred that Konkur does not affect the core holding of Vega."). Thus, this Court agrees with the dissent in Grant that Konkur does not suffice to overcome the sound reasoning of Vega that a private right to enforce Section 191 violations may be implied.

Id. at *8 (internal citation omitted).  The Court should adopt the same reasoning here.  *See also Gamboa*, 2024 WL 815253, at *5-6 ("As for an implied right of action, both *Zachary* and various other district courts in the Second Circuit have rejected Grant's approach. … Indeed, even prior to *Grant*, several other district courts rejected *Konkur*'s application to Section 191. … This Court finds no reason to deviate from *Zachary*'s well-reasoned analysis and thus concludes that the Court

17

of Appeals is likely to apply *Vega*'s reasoning over *Grant*'s in resolving this issue."); *Rankine v. Levi Strauss & Co.*, 674 F. Supp. 3d 57 (S.D.N.Y. 2023) ("This Court joins the many others in this Circuit that have found *Konkur* insufficient to support a conclusion that the Court of Appeals will overturn Vega.").

## IV.    IN THE ALTERNATIVE, THE COURT MAY ELECT TO STAY PROCEEDINGS PENDING THE COURT OF APPEALS' POTENTIAL REVIEW OF ***GRANT***

At least one court has considered deferring a ruling on a case alleging violations of NYLL § 191 pending the Court of Appeals' potential review of *Grant*.  In *Urena v. Sonder USA Inc.*, Judge Victor Marrero stated, although the "New York Court of Appeals has yet to address this question… [] that may soon change."  2024 WL 989593, at *3-4 (S.D.N.Y. Mar. 7, 2024).  "Sonder states that the plaintiff in *Grant* recently filed a motion with the Second Department seeking leave to appeal to the New York Court of Appeals, which is currently pending."  *Id.*  "Though Sonder argues the Court should follow the reasoning in *Grant* instead of *Vega*, Sonder argues in the alternative that the Court 'should await resolution of the anticipated appeal in *Grant* before rendering a decision on Sonder's Motion here.'"  *Id.*  In response to Sonder's argument, Judge Marrero ordered the parties to show cause "why the Court should not stay its ruling on Sonder's motion to dismiss Count One, pending the New York Court of Appeals' potential review of *Grant*."  *Id.*  Plaintiffs respectfully submit it would similarly be appropriate to issue a stay pending resolution of the *Grant* appeal.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court deny Defendant's motion.  In the alternative, Plaintiffs respectfully request a stay of proceedings pending resolution of the *Grant* appeal.

Dated: March 21, 2024                         Respectfully submitted,

                                              By:    */s/ Yitzchak Kopel*

                                              **BURSOR & FISHER, P.A.**
                                              Yitzchak Kopel
                                              Alec M. Leslie
                                              1330 Avenue of the Americas
                                              New York, NY 10019
                                              Telephone: (212) 989-9113
                                              Facsimile: (212) 989-9163
                                              Email: ykopel@bursor.com
                                                     aleslie@bursor.com

                                              *Attorneys for Plaintiff*