UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROSALBA ESPINAL and JUAN RIVERA,          :
*individually and on behalf of all others similarly*
*situated*,                                                          :
                                                                              REPORT & RECOMMENDATION
                              Plaintiffs,               :        22 Civ. 03034 (PAE) (GWG)

        -v.-                                                   :

SEPHORA USA, INC.,                                :

                              Defendant.              :
------------------------------------------------------------X

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

        Plaintiffs Rosalba Espinal and Juan Rivera brought this suit against defendant Sephora

USA, Inc. ("Sephora"), alleging violations of the New York Labor Law §§ 190 et seq.

("NYLL").  See First Amended Class Action Complaint, filed July 26, 2022 (Docket # 18)

("Am. Compl.").  The issue raised by the complaint is whether Sephora complied with the

NYLL's "Frequency of payments" statute, NYLL § 191, which requires manual workers to be

paid weekly.  See NYLL § 191(1)(a)(i).  Sephora moved to dismiss the complaint on the ground

that no private right of action is available to enforce the weekly payment obligation.  On

November 16, 2022, this Court denied Sephora's motion to dismiss largely because the only

Appellate Division decision on the issue, the First Department's decision in Vega v. CM &

Assoc. Constr. Mgt., LLC, 175 A.D.3d 1144 (1st Dep't 2019), concluded that a private right of

action was available.  See Espinal v. Sephora USA, Inc., 2022 WL 16973328 (S.D.N.Y. Nov. 16,

2022), adopted by 2023 WL 2136392 (S.D.N.Y. Feb. 21, 2023).  On January 17, 2024, however,

the Second Department issued Grant v. Glob. Aircraft Dispatch, Inc., 223 A.D.3d 712 (2d Dep't

2024), which held that there is no private right of action for a section 191 violation.  In light of

the intervening change of the law, the parties have now re-briefed the motion to dismiss.[1]  For

the following reasons, Sephora's motion should be granted.

I. <u>BACKGROUND</u>

NYLL § 191 is entitled "Frequency of payments."  Relevant to the instant case is NYLL

§ 191(1)(a)(i), which provides that "[a] manual worker shall be paid weekly and not later than

seven calendar days after the end of the week in which the wages are earned."  Section 191(1)

provides payment schedules for other types of workers, with a general provision applying to

"other worker[s]" in section 191(1)(d).  As to these "other worker[s]," section 191(1)(d) provides

that the "worker shall be paid the wages earned in accordance with the agreed terms of

employment, but not less frequently than semi-monthly, on regular pay days designated in

advance by the employer."

Plaintiffs indicate that Sephora has paid them every two weeks despite the fact that they

are "manual workers" and thus entitled to a weekly pay schedule.  <u>See</u> Am. Compl. ¶¶ 1-5.

Plaintiffs concede that they were paid "half" their wages in a timely manner but sue for damages

as to the untimely payments of the other half of their wages.  <u>See id.</u> ¶¶ 11, 12.  Citing another

section of the NYLL, section 198, plaintiffs seek liquidated damages, attorney's fees and

prejudgment interest.  <u>Id.</u> ¶ 23.  They do not seek to recover the late-paid wages themselves

---

[1]  <u>See</u> Notice of Motion to Dismiss, filed Feb. 15, 2024 (Docket # 75) ("Mot.");
Defendant Sephora USA, Inc.'s Memorandum of Law in Support, filed Feb. 15, 2024 (Docket #
76) ("Mem."); Affirmation of Caitlin L. O'Fallon, filed Feb. 15, 2024 (Docket # 77) ("O'Fallon
Aff."); Plaintiffs' Opposition to Defendant's Motion to Dismiss, filed Mar. 21, 2024 (Docket #
79) ("Opp."); Declaration of Yitzchak Kopel, annexed as Ex. 1 to Opp. (Docket # 79-1) ("Kopel
Decl."); Letter, filed Apr. 3, 2024 (Docket # 81); Defendant Sephora USA, Inc.'s Reply
Memorandum of Law, filed Apr. 18, 2024 (Docket # 83) ("Reply"); Letter, filed May 20, 2024
(Docket # 84); Letter, filed June 10, 2024 (Docket # 85); Letter, filed June 27, 2024 (Docket
# 86); Defendant's Response to Plaintiffs' Notices of Supplemental Authority, filed June 28,
2024 (Docket # 87).

inasmuch as they have been paid all the wages they are due.  Instead, they seek to recover "the

amount of their untimely paid wages as liquidated damages."  Id. ¶ 23.

In relevant part, section 198(1-a) provides:

> In any action instituted in the courts upon a wage claim by an employee or the
> commissioner in which the employee prevails, the court shall allow such
> employee to recover the full amount of any underpayment, all reasonable
> attorney's fees, prejudgment interest as required under the civil practice law and
> rules, and, unless the employer proves a good faith basis to believe that its
> underpayment of wages was in compliance with the law, an additional amount as
> liquidated damages equal to one hundred percent of the total amount of the wages
> found to be due . . . .

NYLL § 198(1-a).

At one time, courts accepted that the reference to "wage claim" in section 198(1-a) did

not refer to section 191 frequency-of-payment claims.  See, e.g., Hussain v. Pakistan Int'l

Airlines Corp., 2012 WL 5289541, at *3 (E.D.N.Y. Oct. 23, 2012) ("The NYLL contains no

provision for private recovery for violations of its provisions regarding frequency of payment

. . . .").  The legal landscape changed, however, with the issuance of the First Department's

decision in Vega v. CM & Assoc. Constr. Mgt., LLC, 175 A.D.3d 1144 (1st Dep't 2019).  In

Vega, the Appellate Division held for the first time that NYLL § 198(1-a) provides an express

private right of action to enforce the weekly wage requirement in section 191(1)(a)(i).  See id. at

1146.  Its reasoning centered on the term "underpayment" in section 198(1-a).  See id. at 1145-

46.  Vega pointed to the dictionary definition of the term "underpay," which means "to pay less

than what is normal or required," and reasoned that "[t]he moment that an employer fails to pay

wages in compliance with section 191(1)(a), the employer pays less than what is required."  Id.

at 1145.  In addition to finding that NYLL § 198(1-a) created an express private right of action

for claims related to the weekly wage requirement, Vega also found that the NYLL contains an

implied right of action for such claims.  See id. at 1146.

For approximately five years, <u>Vega</u> was the only Appellate Division decision on the question of whether a manual worker could file a private lawsuit to enforce section 191. Because principles of federal law required federal courts to follow this decision unless there was "persuasive data" that the New York Court of Appeals would decide otherwise, <u>see</u> <u>DiBella v. Hopkins</u>, 403 F.3d 102, 112 (2d Cir. 2005), this Court, <u>see</u> <u>Espinal</u>, 2022 WL 16973328, at *8-9, and numerous other federal courts, <u>see</u>, <u>e.g.</u>, <u>Shugars v. Masonite Corp.</u>, 2023 WL 7280902, at *6 (N.D.N.Y. Nov. 3, 2023) (collecting cases), concluded that such a private lawsuit was available. Still, the undersigned questioned whether the issue would be decided in the same way were we to examine it on a clean slate. <u>See</u> <u>Espinal</u>, 2022 WL 16973328, at *6 (S.D.N.Y. Nov. 16, 2022) ("While we would likely not reach this conclusion ourselves if the issue were presented afresh, for reasons explained further below, we feel bound to follow <u>Vega</u>'s holding on this point.").

In January 2024, the Second Department issued its decision in <u>Grant v. Glob. Aircraft Dispatch, Inc.</u>, 223 A.D.3d 712 (2d Dep't 2024). <u>Grant</u> held that NYLL § 198(1-a) does not create a private right of action for claims of late payment. <u>See</u> <u>id.</u> at 719-20. In a 3-1 decision, <u>Grant</u> held that although paying a manual worker on a biweekly basis violates NYLL § 191(1)(a), the violation is not "not equivalent . . . with a nonpayment or underpayment of wages . . . ." <u>Id.</u> at 716. In reaching this conclusion, <u>Grant</u> reasoned that an employee who receives a late payment has not "received a lesser amount of earnings than agreed upon." <u>Id.</u> at 715. Examining section 198's legislative history, <u>Grant</u> noted that the history revealed that section 198(1-a) was "aimed at remedying employers' failure to pay the amount of wages required by contract or law" and did not reference "the frequency or timing of wage payments." <u>Id.</u> at 719. One member of the panel dissented in part, agreeing with <u>Vega</u> that because

4

"[m]oney later is not the same as money now," any "late payment of wages is tantamount to a nonpayment or underpayment of wages, which permits recovery under" section 198. Id. at 722 (Christopher, J., concurring in part and dissenting in part).

With the decision in Grant, the presumption that the New York Court of Appeals would follow Vega has now been removed. When faced with an unsettled issue in state law, federal courts must "predict . . . how the Court of Appeals would rule on [the] legal question." Michalski v. Home Depot, Inc., 225 F.3d 113, 116 (2d Cir. 2000). Following Grant, it appears that every federal court but one has predicted that the New York Court of Appeals would follow Vega. See Covington v. Childtime Childcare, Inc., 2024 WL 2923702, at *4 (N.D.N.Y. June 10, 2024) (collecting cases); Levy v. Endeavor Air Inc., 2024 WL 1422322, at *2 (E.D.N.Y. Mar. 29, 2024) ("With one exception, every court within this Circuit that has confronted the split in appellate authority has remained persuaded by Vega.") (collecting cases). The lone exception is Galante v. Watermark Servs. IV, LLC, 2024 WL 989704 (W.D.N.Y. Mar. 7, 2024), which has predicted that the New York Court of Appeals would follow Grant. Id. at *6.[2]

## II. LEGAL STANDARD

A party may move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) when the opposing party's complaint "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a court must accept as true all of the factual allegations contained in a complaint, that principle does not apply to legal conclusions. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) ("[A] plaintiff's

_____

[2] One district court has stayed proceedings "pending potential New York Court of Appeals' review of the decision in [Grant]." Urena v. Sonder USA Inc., 2024 WL 1333012, at *3 (S.D.N.Y. Mar. 28, 2024). Because we have not been made aware that the New York Court of Appeals has granted review of this issue, a stay is not appropriate.

obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (punctuation and alterations omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," Iqbal, 556 U.S. at 678, and a court's first task is to disregard any conclusory statements in a complaint, id. at 679.

Next, a court must determine if the complaint contains "sufficient factual matter" which, if accepted as true, states a claim that is "plausible on its face." Id. at 678 (punctuation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" but not "'show[n]' . . . 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

III. DISCUSSION

A. Express Private Cause of Action

We begin by agreeing with Sephora that the issue presented "is not answered by reviewing how many decisions followed Vega prior to the Grant decision, nor how many decisions follow Vega after." Reply at 1. Instead, we must reach our own determination.

The crucial difference between Vega and Grant centers on section 198(1-a)'s use of the term "underpayment." As just noted, the First Department in Vega relied on a dictionary definition of the term "underpay" to conclude that a late payment results in an "underpayment"

because that late payment is "less" than what would have been received had the wage been paid

on time — that is, paid weekly as required by section 191 rather than biweekly.  See Vega, 175

A.D.3d at 1145.  The Second Department in Grant by contrast placed more emphasis on the

"plain language" of "underpayment."  See Grant, 223 A.D.3d at 715.  Grant found that an

underpayment only occurs when "an employee has received a lesser amount of earnings than

agreed upon," and thus, receiving the agreed upon wage a week later — but still on the "regular

payday" — does not constitute an underpayment.  See id.

On the issue of statutory interpretation under New York law, "courts are obliged to

interpret a statute to effectuate the intent of the Legislature."  People v. Williams, 19 N.Y.3d 100,

103 (2012) (citation and quotation marks omitted).  New York courts certainly examine statutory

language as the "clearest indicator" of legislative intent and use it as the "starting point" for any

such inquiry.  People v. Golo, 26 N.Y.3d 358, 361 (2015).  Nonetheless, under New York law

even a statutory term that is unambiguous may not provide proper guidance as to legislative

intent.  As the New York Court of Appeals has stated:

> In matters of statutory interpretation generally, and particularly here, legislative
> intent is the great and controlling principle.  Legislative intent may be discerned
> from the face of a statute, but an apparent lack of ambiguity is rarely, if ever,
> conclusive.  Generally, inquiry must be made of the spirit and purpose of the
> legislation, which requires examination of the statutory context of the provision as
> well as its legislative history.

Sutka v. Conners, 73 N.Y.2d 395, 403 (N.Y 1989) (internal citations, punctuation and alterations

omitted).  Furthermore, the New York Court of Appeals has admonished that "[l]iteral meanings

of words are not to be adhered to or suffered to defeat the general purpose and manifest policy

intended to be promoted."  Council of City of New York v. Giuliani, 93 N.Y.2d 60, 69 (1999)

(citation and quotation marks omitted); accord Palmer v. Amazon.com, Inc., 51 F.4th 491, 514

(2d Cir. 2022).

Certainly, the term "underpayment" could mean, as <u>Vega</u> points out, to be paid less than an amount due on the date it was due and without regard to whether it was paid a week (or a few hours) later than the due date.  <u>See</u> <u>Vega</u>, 175 A.D.3d at 1145.  If all that we were to examine was the dictionary definition of "underpayment," that is perhaps a reasonable conclusion.  But there are indications that it was not the intent of the New York State Legislature to provide a private cause of action for violations of section 191's "frequency of payment" provisions.  This intent is reflected in the Legislature's inclusion of a liquidated damages provision.  Section 198(1-a) contemplates that the "underpayment" will be remedied by requiring not only remittance of that "underpayment" but also an additional amount in the form of liquidated damages consisting of the "wages found to be due."  NYLL § 198(1-a).  Because plaintiffs allege that their loss is the underpayment of "wages," <u>see</u> Am. Compl. ¶¶ 21-22, they seek to recover as liquidated damages "the amount of their untimely paid wages," <u>id.</u> ¶ 23 — that is, the entire one-week salary that was paid one week late.

One problem with plaintiffs' reading of the statute is that where the only violation is a frequency-of-payment violation, as soon as the wages are paid at the next (albeit incorrect) pay period, it is not clear that there are any "wages" that can be "found to be due."  Accordingly, in light of the "found to be due" language in section 198, the term "underpayment" in section 198 is more naturally understood as not applying to wages that were merely paid late and thus were never "found" to be due.

But the bigger problem with the plaintiffs' reading of the term "underpayment" is that the plaintiffs' reading cannot be reconciled with the Legislature's decision to provide for liquidated damages in the manner that it did.  The "wages" that plaintiffs allege are "due" under section 198(1-a) are "half" of the biweekly wage.  <u>See</u> Am. Compl. ¶¶ 11-12, 23.  Thus, plaintiffs'

proposed interpretation of the word "underpayment" leads to the extraordinary result that a liquidated damages amount must be imposed (absent affirmative proof by the defendant of "good faith") that exceeds by astronomical proportions the actual harm to the plaintiffs.  In contrast with the usual failure-to-pay-wages case, the actual harm to the plaintiffs in a frequency-of-payment case is not the loss of the wage entirely but rather the lost use of the money for a one-week period.  See id. ¶¶ 11-12 (plaintiffs were "temporarily deprived of money owed").  New York law recognizes that the "purpose of prejudgment interest is to compensate parties for the loss of the use of money they were entitled to receive, taking into account the 'time value' of money." Kassis v. Teachers' Ins. & Annuity Ass'n, 13 A.D.3d 165, 165 (1st Dep't 2004); accord Webb v. GAF Corp., 949 F. Supp. 102, 105 (N.D.N.Y. 1996) (citation omitted).  Using New York's standard (and unusually high) prejudgment interest rate of 9% per annum, N.Y. C.P.L.R. § 5004(a), the harm to a worker for a one-week delay is a tiny fraction — approximately 1/578th — of the liquidated damages amount that must be awarded by a court if section 198(1-a) applies to violations of section 191: namely, the full week's salary.  In other words, the liquidated damages plaintiffs assert the statute entitles them to are 578 times the actual harm to the worker.[3]  Thus, the plaintiffs' proposed interpretation results in the imposition

---

[3]  The figure is calculated based on the claim that plaintiffs' harm was the lost use of one week's salary for a one-week period.  See generally Am. Compl. ¶¶ 11-12.  The lost use of any given week's salary for a period of one week is 9% of one week's salary divided by 52 (.173% of the weekly salary).  1/.173% is approximately 578.

While we have used 9% interest as a rate that the New York Legislature could reasonably have contemplated as compensating a late-paid worker if it in fact intended to include frequency-of-payment violations within section 198, using any rates the Legislature might have contemplated — such as market rates — would result in similarly disproportionate liquidated damages awards.  Indeed, the lower the interest rate, the more disproportionate the liquidated damages would be.

of a liquidated damages figure not of 100% of the actual loss to plaintiffs, as contemplated by

section 198, but rather on the order of 57,800% of the loss.

In this case, the plaintiffs do not specify their hourly wage, but using the current

minimum wage rate of $16.00 for New York City and assuming a 40-hour work week, the

plaintiffs here were harmed by losing interest on their weekly salary of $640 for any one-week

period where they were paid late. At 9%, that interest amounts to approximately $1.10 for that

one week ($640 x (0.09 / 52)). The plaintiffs allege this was repeated 26 times over the course of

a year leading to a loss of $28.80 each year (~$1.10 x 26). Yet under plaintiffs' interpretation of

the statute, a court would be required to award liquidated damages of $16,640 ($640 x 26) for

each year of work notwithstanding their actual loss of only $28.80.

In creating the liquidated damages provision in section 198 to compensate for the failure

to pay "wages found to be due," the New York State Legislature showed its intent to compensate

a worker by awarding that worker 100% of the worker's lost wages as well as imposing a 100%

penalty, which matches numerically the harm the worker incurred. We do not believe it was the

intent of the Legislature to impose a penalty not of 100% of the harm to the worker but instead a

penalty likely to be on the order of 57,800% of the harm to the worker. In other words, the New

York State Legislature's inclusion of the 100% liquidated damages penalty provision in section

198(1-a) shows us how it viewed the term "underpayment" in the statute.

The New York Court of Appeals has held that a court must "interpret a statute so as to

avoid an unreasonable or absurd application of the law." Lubonty v. U.S. Bank Nat'l Ass'n, 34

N.Y. 3d 250, 255 (2019) (citation and quotation marks omitted). It has further cautioned that any

interpretation "that produces inequitable and potentially absurd results . . . must be rejected." Id.

Where wages are not paid at all, or paid in a lesser amount than owed, the Legislature might

rationally impose a liquidated damages provision of 100% of the unpaid wages to penalize an employer and to compensate an employee for interest lost, which was the legislative intent behind the liquidated damages provision in section 198(1-a) when it was first enacted.  See, e.g., Governor's Approval Mem, Bill Jacket, L. 1967, ch. 310 at 3.[4]  The plaintiffs' proposed interpretation, however, results in the imposition of a liquidated damages figure not of 100% of the loss to plaintiffs, as contemplated by section 198, but rather on the order of 57,800% of the loss.  Not only is the imposition of such liquidated damages an "unreasonable" and "absurd" application of the law," Lubonty, 34 N.Y. 3d at 255, but it would also likely result in a finding that the liquidated damages provision is unconstitutional in every single case when it is applied to a failure to adhere to the proper payment schedule required by section 191, see generally New York v. United Parcel Serv., Inc., 942 F.3d 554, 599 n.36 (2d Cir. 2019) ("A civil penalty violates the Excessive Fines Clause if it is 'grossly disproportional to the gravity of the defendant's offense.'") (quoting United States v. Bajakajian, 524 U.S. 321, 337 (1998)); St. Louis, I.M. & S. Ry. Co. v. Williams, 251 U.S. 63, 66-67 (1919) (statutory penalties that are "wholly disproportioned to the" harm claimed violate the Due Process Clause).  Certainly, now is not the proper stage of the case to address the constitutionality of a liquidated damages award since none has yet been made.  See Pozo v. BlueMercury, Inc., 2023 WL 4980217, at *4 n.7 (S.D.N.Y. Aug. 3, 2023) (finding Excessive Fines argument "somewhat persuasive" but "premature").  But the fact that the proposed interpretation of section 198(1-a) would invariably lead to an unconstitutional result provides an additional reason to believe that it was not the intention of the New York State Legislature to include a section 191 frequency-of-payments

---

[4] This document is available at: https://nysl.ptfs.com/aw-server/rest/product/purl/NYSL/i/c70ed5dd-8f04-4a30-81bf-35223366132b.

violation within the ambit of section 198(1-a).

The New York State Department of Labor's ("DOL") own interpretation of a related statute supports the notion that section 198(1-a) should not be read to cover timeliness of payment claims. A separate section of the NYLL, section 218, gives the DOL the power to issue administrative orders to remedy a violation of section 191 and other sections of the NYLL. See NYLL § 218; see also NYLL § 10. Section 218 provides that after an employee files a complaint with the DOL, the DOL shall issue an order "directing payment of wages . . . found to be due, and liquidated damages in the amount of one hundred percent of unpaid wages." NYLL § 218(1). However, "[w]here the violation is for a reason other than the employer's failure to pay wages . . . found to be due," section 218 instead directs the DOL to seek a civil penalty of $1,000 for the first violation and increasing amounts for subsequent violations. Id. In other words, in the event no "wages" are "found to be due," the DOL uses a tiered civil penalty structure rather than ordering liquidated damages. In a document entitled "Guidelines - Civil Penalties for Labor Law Violations," the Department of Labor has taken the position that any claim for "[f]ailure to make timely payment of wages," including specifically section 191(1)(a), is subject to the tiered civil penalty structure. See Guidelines - Civil Penalties for Labor Law Violations, annexed as Ex. 1 to Reply (Docket # 83-1). This position reflects that DOL believes that no wages are "found to be due" in such a situation.

The DOL website for making complaints reinforces this view, identifying a failure to make "timely payment of wages" as a "Non-Wage Item[]." See Unpaid/Withheld Wages and Wage Supplements, N.Y. State Dep't of Labor (available at: https://dol.ny.gov/unpaidwithheld-wages-and-wage-supplements). Finally, when the DOL has prosecuted frequency-of-payment violations, it has sought these tiered civil penalties rather than civil penalties calculated based on

12

the wage found to be due.  See Ribble (d/b/a Perfecto Cleaners), PR NO. 06-038, 039 (Indus. Bd.

of Appeals, Dec. 19, 2007), at 2, 5 (available at:

https://industrialappeals.ny.gov/system/files/documents/2020/02/pr06038.pdf).

New York adheres to the principle that the "[i]nterpretation of a statute by the agency

charged with its enforcement is, as a general matter, given great weight and judicial deference so

long as the interpretation is neither irrational, unreasonable nor inconsistent with the governing

statute."  Moran Towing & Transp. Co. v. N.Y. State Tax Com., 72 N.Y.2d 166, 173 (1988).

The interpretation that the DOL gives to the coverage of section 218 with respect to section 191

is irreconcilable with the interpretation proposed by plaintiffs of section 191 inasmuch as the

DOL's interpretation of section 218 reveals its classification of section 191 claims as those

"[w]here the violation is for a reason other than the employer's failure to pay wages . . .  found to

be due." [5]

Our examination of legislative history provides no support for either of the proposed

readings of the statute.  No party has pointed to any mention of section 191's provisions in the

legislative history of section 198 and thus, there is no evidence that the New York State

Legislature thought that section 198 was providing a remedy for an employer's failure to meet

the timely payment requirement.

---

[5] Plaintiffs point to a DOL opinion letter relating to the signing of time sheets to argue
that it shows the DOL believes that the pay frequency provision in section 191 is privately
enforceable.  See Request for Opinion, annexed as Ex. 8 to Docket # 24 (Docket # 24-8).  The
letter, however, contains only a generic statement, not directly relevant to the inquiry being
made, that an employee may bring an action for a violation of "that [referring to section 191] or
any other section of the labor law."  See id. at 4.  Given that section 198 plainly does not allow
suit for the sections of the NYLL that do not involve payment of wages, see, e.g., Hill v. City of
New York, 136 F. Supp. 3d 304, 350 (E.D.N.Y. 2015) (no private action available for meal break
violation under section 162), and given that this letter did not involve an inquiry addressing the
ability to bring suit under section 198 specifically, we do not view this letter as giving an official
position on the availability of an action under section 198 for violations of section 191.

Finally, some sense of legislative intent may be gleaned from the unusual nature of the

frequency-of-payment provision.  As Judge Cogan of the Eastern District of New York

explained:

> [T]he New York Legislature must be presumed to have known what an unusual
> step it was taking in forcing employers, particularly national employers with
> operations in New York, to pay manual workers' wages weekly, and therefore left
> it to the Commissioner to balance the risk of driving businesses out of the state
> against the Legislature's desire that workers should be paid weekly — a result
> that could be obtained with negotiation, settlement, or administrative proceedings
> before resorting to litigation.  This is because § 191 is not just in derogation of the
> common law — it is in extreme derogation of the common law.  According to the
> United States Department of Labor, only nine states have some form of weekly
> requirement for paying wages.  Thirty-eight states either allow bi-weekly
> payment, like defendant here, or longer (many allow monthly payments), or have
> no statutory payment period at all.  See U.S. Department of Labor, "State Payday
> Requirements,", accessible at https://tinyurl.com/24b8p3ww.  Against this
> national backdrop, it makes perfect sense that the Legislature would exercise
> some caution and allow a public officer — the Commissioner of Labor — to
> determine whether to pursue action for a one-week delay in payment — especially
> considering the onerous consequence of liquidated damages — rather than private
> plaintiffs' attorneys.

Georgiou v. Harmon Stores, Inc., 2023 WL 112805, at *5 (E.D.N.Y. Jan. 5, 2023).

Perhaps the most cogent argument supporting plaintiffs' proposed interpretation of

section 198 posits an employer who fails to pay wages for a lengthy period and does not make

payment until the worker is on the verge of filing suit or who does so after suit is filed.  See Opp.

at 9-10.  A narrow reading of "underpayment" would mean such a worker is limited to a

common law contractual remedy and is entitled to no further compensation.  This is certainly a

troubling hypothetical.  Equally troubling, if not more troubling, however, is the situation

presented here: that is, where the liquidated damages award borne by the employer is hundreds

of times the loss to the worker — or more obviously, a hypothetical situation where an employer

regularly pays the employee not a week late but a few hours late, on the next day, resulting in

virtually no loss of use of the money and a liquidated damages award many thousand times

greater than the harm to the worker.

All that need be decided today, however, is that the claim brought by the plaintiffs here does not reflect an "underpayment" within the meaning of section 198(1-a). But to the extent the New York Court of Appeals believed that there might be circumstances where a late payment matures into an underpayment, we believe the Court of Appeals would likely conclude that a claim is decidedly not about an "underpayment" in the situation presented here: namely, where the dispute centers on which category of workers listed in section 191 the plaintiffs fall into. In other words, we believe the Court of Appeals would likely conclude that there is no "underpayment" when wages are paid on a timetable permitted by section 191 — that is up to twice per month for all workers not specifically covered by the statute's categories. See NYLL § 191(1)(d). Under this view, only where the frequency of payment goes beyond the ranges permitted by section 191 — that is, where pay is less frequent than bi-monthly — does the situation move out of the realm of a failure to make timely payments in accordance with the requirements of section 191 and into the realm of an "underpayment" contemplated by section 198.

This distinction is supported by Grant, which declared that the "payment of full wages on the regular biweekly payday" cannot constitute a "nonpayment or underpayment." Grant, 223 A.D.3d at 715 (emphasis added); see also id. at 716 (emphasizing that "[t]he employer's payment of full wages on the regular payday" is "crucial"). The fact that there was payment within one week of the disputed wage payment is also an underpinning of the sole federal case to follow Grant over Vega. See Galante, 2024 WL 989704, at *9 ("[A]s long as the employer pays the employee in full one week later, the violation is ultimately one of timing, not amount.").

Even if it were thought that a continued delay in a wage payment must at some point

convert a violation of section 191's frequency-of-payment requirements into an underpayment, it is not necessary here to reach the question of exactly how much delay would have to occur.  It is enough to say that where, as here, an employer uses one of the frequency-of-payment periods permitted under section 191, the dispute about that choice is best characterized as a dispute about frequency of payments and does not reflect that the plaintiffs were subject to an "underpayment" as the term is used in section 198.

The Court recognizes that it would be simpler to read "underpayment" as encompassing any failure to pay — even for a one-day period — and to leave it at that.  But the New York Court of Appeals is careful not to interpret a statute in a manner that results in "an unreasonable or absurd application of the law."  Lubonty, 34 N.Y. 3d at 255 (citation and quotation marks omitted).  Furthermore, the Court of Appeals has admonished:

> "[O]f course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else.  But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning."  (Cabell v. Markham, 148 F.2d 737, 739 [2d Cir. 1945].)  "This question cannot be answered by closing our eyes to everything except the naked words of the statute.  The notion that because the words of a statute are plain, its meaning is also plain, is merely pernicious oversimplification."  (Mr. Justice Frankfurter dissenting in United States v. Monia, 317 U.S. 424, 431 [1943].)

People v. Brooks, 34 N.Y.2d 475, 478 (1974) (alterations omitted).  Here, plaintiffs' interpretation of the word "underpayment" produces results that cannot be reconciled with the structure of the statutory provision and the intentions of a rational legislature.  Accordingly, we agree with the district court in Galante, 2024 WL 989704, at *10, and predict that the New York Court of Appeals would follow the Second Department's decision in Grant.

B.  Implied Private Cause of Action

In addition to holding that section 198 creates an express cause of action for violations of

section 191, <u>Vega</u> also held that such a cause of action was impliedly created.  <u>See</u> <u>Vega</u>, 175

A.D.3d at 1146.  <u>Grant</u> reached the opposite conclusion.  <u>See</u> <u>Grant</u>, 223 A.D.3d at 719-20.

In determining whether a statutory provision creates an implied cause of action, New

York courts use a three-factor test.  As the New York Court of Appeals has held:

> In New York, where a statute does not make express provision for a private
> remedy, such a remedy may be had "only if a legislative intent to create such a
> right of action is 'fairly implied' in the statutory provisions and their legislative
> history" (<u>Brian Hoxie's Painting Co. v. Cato-Meridian Cent. School Dist.</u>, 76
> N.Y.2d 207, 211, 557 N.Y.S.2d 280, 556 N.E.2d 1087 [1990]).  To evaluate
> whether the legislative intent favors such implied private rights of action, we have
> identified three relevant factors: "(1) whether the plaintiff is one of the class for
> whose particular benefit the statute was enacted; (2) whether recognition of
> a private right of action would promote the legislative purpose; and (3) whether
> creation of such a right would be consistent with the legislative scheme" (<u>Sheehy</u>
> <u>v. Big Flats Community Day, Inc.</u>, 73 N.Y.2d 629, 633, 543 N.Y.S.2d 18, 541
> N.E.2d 18 [1989], citing <u>CPC Intl. Inc v. McKesson Corp.</u>, 70 N.Y.2d 268, 276-
> 277, 519 N.Y.S.2d 804, 514 N.E.2d 116 [1987], and <u>Burns Jackson Miller</u>
> <u>Summit & Spitzer v. Lindner</u>, 59 N.Y.2d 314, 329-331, 464 N.Y.S.2d 712, 451
> N.E.2d 459 [1983]).  "Critically, all three factors must be satisfied before
> an implied private right of action will be recognized" (<u>Haar v. Nationwide Mut.</u>
> <u>Fire Ins. Co.</u>, 34 N.Y.3d 224, 229, 115 N.Y.S.3d 197, 138 N.E.3d 1080 [2019]).

<u>Ortiz v. Ciox Health LLC</u>, 37 N.Y.3d 353, 360 (2021).

Here, the first two factors of the analysis are met.  As the New York Court of Appeals

stated in <u>Konkur v. Utica Acad. of Sci. Charter Sch.</u>, 38 N.Y.3d 38, <u>reargument denied</u>, 38

N.Y.3d 1002 (2022), "[t]he general intent of article 6 of the Labor Law is to 'strengthen . . . the

rights of employees.'"  <u>Id.</u> at 41 (citation omitted).  Furthermore, "[a]n individual plenary right

would arguably advance this goal by allowing those affected" by unlawful practices "an

opportunity to vindicate this right individually. . . ."  <u>Id.</u>  As was true in <u>Konkur</u>, plaintiffs here

are members of the "class for whose particular benefit the statute was enacted" and allowing

them to vindicate their rights under the NYLL through a private cause of action "would promote

the legislative purpose."  <u>Ortiz</u>, 37 N.Y.3d at 360.

Konkur, which was decided after Vega, emphasized that "[t]he third factor . . . is the 'most important and typically turns on the legislature's choice to provide one particular enforcement mechanism to the exclusion of others' because it 'demonstrates that the legislature considered and decided what avenues of relief were appropriate.'"  Konkur, 38 N.Y.3d at 41 (quoting Ortiz, 37 N.Y.3d at 360-62).  Konkur involved an effort by an employee to file a civil action under NYLL § 198-b.  That statute prohibits "kick-backs" of wages by making it unlawful for any person to "request, demand, or receive" part of an employee's wage or salary if the "failure to comply with such request or demand will prevent such employee from procuring or retaining employment."  NYLL § 198-b(2).  The statute makes its violation a misdemeanor, NYLL § 198-b(5), and in a separate section, NYLL § 218, provides for administrative enforcement by the DOL.

Konkur held that section 198-b did not create an implied cause of action.  See Konkur, 38 N.Y.3d at 43-45.  In reaching this conclusion, Konkur relied on the Legislature's choice to "expressly provide[] two robust enforcement mechanisms" — that is, the criminal and administrative enforcement mechanisms — which in its view counseled against recognizing an additional enforcement mechanism "beyond the statute's already 'comprehensive' scheme." Konkur, 38 N.Y.3d at 43 (quoting Mark G. v. Sabol, 93 N.Y.2d 710, 720 (1999)).  Furthermore, it relied on the structure of article 6 of the NYLL as a whole, noting that the Legislature "expressly provided a private right of action" in other portions of NYLL article 6, but declined to do so in section 198-b.  Id. at 44 ("Where the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action.").

There are several important similarities between section 191, the frequency of payment statute, and section 198-b that suggest we should reach a similar conclusion.  First, as was true in

Konkur, the Legislature "expressly provided a private right of action" for certain claims arising under article 6 of the NYLL, but did not expressly do so for section 191, which also falls within article 6. Id. Second, the Legislature has provided an administrative enforcement mechanism for violations of section 191 in section 218 — the same administrative enforcement mechanism that existed in Konkur. Under section 218, the DOL can bring an action to order compliance with the pay frequency requirements of section 191 and impose civil penalties. See NYLL § 218(1).

There are differences as well. First, while both sections 191 and 198-b can be enforced through administrative actions brought by the DOL, section 198-b is explicitly mentioned in the section providing for administrative enforcement, NYLL § 218, whereas section 191 is included only through a general reference to "article six (payment of wages)." See NYLL § 218. Second, while sections 191 and 198-b are both enforceable through administrative actions, only section 198-b currently provides a mechanism for criminal enforcement. See NYLL § 198-b(5).

Nonetheless, we do not find these differences significant. Konkur's observation that "[w]here the legislature intended for an article 6 provision to be enforced individually, it expressly provided a private right of action," Konkur, 38 N.Y.3d at 44, suggests that in conducting the analysis, we should not just look to a particular section of a statute but instead should analyze article 6 (which contains both section 191 and 198-b) as a whole. In other words, the payment of wages has been the subject of a comprehensive "statutory scheme," Konkur, 38 N.Y.3d at 44-45, as reflected in article 6. As for the criminal penalties, even if these do not currently exist for the enforcement of section 191, they exist for other provisions. See NYLL

§ 198-a.[6]  This supports the notion that the Legislature gave consideration as to which provisions should be the subject of a criminal enforcement mechanism, which should be the subject of enforcement by the DOL, and which should be the subject of a private right of action. Additionally, the statute creates private enforcement schemes for certain specific violations but not for others.  See NYLL § 198(1-b) (private right of action for NYLL hiring notice provision); NYLL § 198(1-d) (private right of action for NYLL wage statements provision).

In other words, "the Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself" as to wage issues.  Cruz v. TD Bank, N.A., 22 N.Y.3d 61, 71 (2013) (citation, quotation marks and alterations omitted).  As Konkur put it, "[i]n interpreting whether the legislature intended [a right to private suit] despite . . . silence, the relevant point is that the legislature chose to provide for it in other provisions in this statutory scheme, but not for this one."  Konkur, 38 N.Y.3d at 44.

As one court in this Circuit noted in rejecting the conclusion that section 191 created an implied private right of action, "Vega simply assumed that if a plaintiff is a member of the class that the legislature intended to protect, and private enforcement would further the purposes of the statute — the first two requirements for implying a private right of action — it follows a fortiori that private enforcement would not be inconsistent with the statute."  Georgiou, 2023 WL 112805, at *4 (E.D.N.Y. Jan. 5, 2023).  In light of Konkur's emphasis on the importance of the third factor and the need to consider the statutory scheme as a whole, we do not believe Vega's analysis is persuasive.  The same result has been reached by Georgiou, which concluded even

---

[6]  It appears that at some point in the past there was in fact a criminal statute penalizing any person who "does not pay the wages of his . . . employees."  See People v. Vetri, 309 N.Y. 401, 404 (1955) (cited in Grant, 223 A.D.3d at 713).  If anything, the existence of a prior criminal enforcement mechanism supports the notion that the Legislature has made conscious choices through the years as to how to enforce wage payment obligations.

before <u>Grant</u> was issued that it had "no trouble finding that <u>Vega</u>'s alternative holding that there is an implied right of action has been abrogated by <u>Konkur</u>."  <u>Id.</u>

Accordingly, we predict that the New York Court of Appeals would follow the reasoning of <u>Grant</u> and conclude that section 191 does not permit an implied cause of action.

<u>Conclusion</u>

For the foregoing reasons, Sephora's motion to dismiss (Docket # 75) should be granted.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections.  <u>See also</u> Fed. R. Civ. P. 6(a), (b), (d).  A party may respond to any objections within 14 days after being served.  Any objections and responses shall be filed with the Clerk of the Court.  Any request for an extension of time to file objections or responses must be directed to Judge Engelmayer.  If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal.  <u>See</u> <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.</u>, 596 F.3d 84, 92 (2d Cir. 2010).

Dated: July 31, 2024
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge