UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ROSALBA ESPINAL et al.,

                                  Plaintiffs,

           -v-

SEPHORA USA, INC.,

                                  Defendant.

22 Civ. 3034 (PAE) (GWG)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

       Plaintiffs Rosalba Espinal and Juan Rivera ("plaintiffs") bring this putative class action against their former employer, defendant Sephora USA, Inc. ("Sephora"). Their sole claim is that Sephora's biweekly pay schedule violates the requirement of New York Labor Law ("NYLL") § 191(1)(a)(i) that manual workers be paid weekly. As damages, plaintiffs seek, *inter alia*, liquidated damages in the amount of the late-paid wages. Sephora moves to dismiss on the ground that the NYLL does not give rise to either an express or an implied private right of action based on statutorily late wage payments. The issue has divided state appellate courts, with the First Department in 2019 finding express and implied rights of action to sue over late wage payments, *see Vega v. CM & Assocs. Constr. Mgmt., LLC*, 107 N.Y.S.3d 286, 288–89 (1st Dep't 2019), and the Second Department this year finding no such rights, *see Grant v. Glob. Aircraft Dispatch, Inc.*, 204 N.Y.S.3d 117, 125 (2nd Dep't 2024).

       Pending now is the July 31, 2024 Report and Recommendation of United States Magistrate Judge Gabriel W. Gorenstein. *See* Dkt. 89 (the "Report"). It recommends granting the motion to dismiss. Dkt. 75. For the following reasons, the Court, finding the First

Department's reasoning persuasive and likely to prefigure the holding of the New York Court of Appeals, declines to adopt the Report, and denies the motion to dismiss.

I.  **Background**

The Court incorporates by reference the summary of the facts provided in the Report, to which no party objects.

In brief, plaintiffs' Amended Complaint alleges that Sephora failed to pay them and similarly situated employees wages on a weekly basis in violation of the frequency-of-payments provision of the NYLL. *See* Dkt. 18 ("AC"). Between January 2020 and March 2021, Espinal worked as a "Beauty Advisor" at Sephora's Lexington Avenue location in Manhattan. AC ¶ 11. Between November 2017 and July 2021, Rivera worked as an "Operations Associate" at a Sephora store in Times Square in Manhattan. *Id.* ¶ 12. Plaintiffs allege that they were manual laborers, that Sephora paid them every two weeks, and that such a biweekly pay practice violated the requirement of NYLL § 191(1)(a)(i) that manual laborers be paid weekly. *Id.* ¶¶ 11–12, 22. As a consequence, the AC alleges, plaintiffs, with respect to every other week of their wages, were "temporarily deprived" of the opportunity to "invest, earn interest on, or otherwise use these monies that were rightfully [theirs] . . . los[ing] the time value of that money." *Id.* ¶ 11. Plaintiffs seek to recover the amount of untimely paid wages as liquidated damages, plus reasonable attorneys' fees and costs, and pre- and post-judgment interest.

On August 25, 2022, Sephora moved to dismiss the AC under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), on the grounds that plaintiffs lack Article III standing and that there is neither an express nor implied private right of action for violations of § 191. Dkts. 19, 20. On August 26, 2022, the Court referred the motion to Judge Gorenstein for a

Report and Recommendation. Dkt. 22. On September 26, 2022, plaintiffs opposed the motion. Dkts. 23, 24. On October 17, 2022, Sephora replied. Dkt. 28.

On November 16, 2022, Judge Gorenstein issued an initial Report recommending that the Court deny the motion to dismiss. Dkt. 32. He concluded that the AC had pled an injury—the temporary deprivation of earned wages—sufficient to support plaintiffs' standing. *Id.* He further concluded that, based on the First Department's decision in *Vega*, 107 N.Y.S. 3d at 288, the only on-point state appellate decision to have by then issued, the NYLL provides a private right of action to vindicate violations of § 191. *Id.* On February 21, 2023, this Court adopted the Report in its entirety. Dkt. 39.

On February 1, 2024, noting the Second Department's recent contrary decision in *Grant* that repudiated the reasoning in *Vega*, Judge Gorenstein, to whom the Court had referred the case for general pretrial supervision, Dkt. 5, *sua sponte* directed the parties to rebrief whether there was a private right of action. Dkt. 73 (citing *Grant*, 204 N.Y.S.3d at 117). On February 15, 2024, Sephora filed a new motion to dismiss. Dkt. 75. On March 21, 2024, plaintiffs opposed the motion. Dkt. 79. On April 18, 2024, Sephora replied. Dkt. 83.

On July 31, 2024, Judge Gorenstein issued the Report at issue here. Dkt. 89. It recommended that the motion to dismiss be granted, on the ground that the New York Court of Appeals was likely to agree with the Second Department's reasoning in *Grant* and not the First Department's reasoning in *Vega*. *Id.* On August 28, 2024, plaintiffs filed an objection to the Report. Dkt. 95. On September 11, 2024, Sephora filed a response. Dkt. 96.

## II. Discussion

### A. Standard of Review

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When specific objections are timely made, as is the case here, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). But if a party objecting to a Report and Recommendation makes only conclusory or general objections, or simply reiterates its original arguments, the Court will review the Report strictly for clear error. *See Dickerson v. Conway*, No. 08 Civ. 8024 (PAE), 2013 WL 3199094, at *1 (S.D.N.Y. June 25, 2013).

To survive a Rule 12(b)(6) motion, the allegations in the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). The Court accepts as true all well-pled factual allegations in plaintiffs' AC. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).

### B. Analysis

It is undisputed on defendant's motion to dismiss that the AC, in alleging that Sephora paid its manual workers on a biweekly basis, pleads violations of § 191. The sole issue before

4

the Court is whether an express or implied private right of action is available under New York law for such violations.

A federal court applying state law is "generally obliged to follow the state law decisions of state intermediate appellate courts." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 199–200 (2d Cir. 2005) (quoting *Pentech Int'l, Inc. v. Wall St. Clearing Co.*, 983 F.2d 441, 445 (2d Cir. 1993)). But where there is a split in authority among intermediate Appellate Divisions of the New York courts, the federal court is not bound by the law of the department that geographically covers the locale where the federal court sits. Instead, the court must "predict" how the New York Court of Appeals would resolve the question. *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000).

The New York state appellate courts are today divided. For half a decade, the First Department's decision in *Vega* was the only decision on point. *See* 107 N.Y.S.3d at 288. Its analysis centered on the text of NYLL § 198(1-a), which affords a private right of action for "wage claim[s]" that seek, as liquidated damages, "the full amount of any underpayment." *Vega* found instructive the dictionary definition of the term "underpay," which means "to pay less than what is normal or required." 107 N.Y.S.3d at 288 (quoting Merriam-Webster's Collegiate Dictionary 1364 (11th ed. 2012)). To be paid, the First Department reasoned, means to be paid on time: "The moment that an employer fails to pay wages in compliance with section 191(1)(a), the employer pays less than what is required." *Id.* The First Department also found persuasive the Supreme Court's interpretation of an analogous provision in the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*, which has been held to guide construction of like provisions in the NYLL. The First Department noted that, in construing the FLSA's liquidated damages provision, the Supreme Court has held that "regardless of whether an employee has

5

been paid wages owed before the commencement of the action, the statute provides a liquidated damages remedy for the 'failure to pay the statutory minimum on time.'" *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)). Observing that there are "no meaningful differences" between the FLSA and NYLL liquidated damages provisions, and that the FLSA authorizes employees to sue to recover liquidated damages equal to the amount of wages paid late, the First Department reasoned that a private right of action also exists under the NYLL. *Vega*, 107 N.Y.S.3d at 288 (citation omitted). In any event, it held, even if the NYLL did not expressly authorize a private right of action for frequency-of-payments violations of § 191, the statute's purpose and scheme supported implying a private right of action. *See id.* at 289.

For the ensuing five years, while *Vega* was the only state appellate decision on point, federal courts presented with the same question followed it as the best guide as to how the New York Court of Appeals would resolve whether a manual worker could file a private lawsuit to enforce § 191.[1] However, in *Grant*, issued in January 2024, the Second Department reached the opposite conclusion. It, too, focused its analysis on the text of § 198(1-a), but found that the most natural reading of the term "underpayment" is to "receiv[e] a lesser amount of earnings than agreed upon" and that the term did not naturally cover a situation in which "the employee received the agreed-upon amount one week later, on the regular payday." 204 N.Y.S.3d at 122.

---

[1] *See, e.g., Liang v. USA QR Culture Indus. Dev. LLC*, 704 F. Supp. 3d 408, 411 (S.D.N.Y. 2023); *Shugars v. Masonite Corp.*, No. 22 Civ. 1237 (MAD), 2023 WL 7280902, at *6 (N.D.N.Y. Nov. 3, 2023); *Rath v. Jo-Ann Stores, LLC*, No. 21 Civ. 791 (WMS), 2022 WL 17324842, at *6 (W.D.N.Y. Nov. 29, 2022); *Caul v. Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK), 2021 WL 4407856, at *3 (E.D.N.Y. Sept. 27, 2021); *Mabe v. Wal-Mart Assocs., Inc.*, No. 20 Civ. 00591 (TJM), 2021 WL 1062566, at *5 (N.D.N.Y. Mar. 18, 2021); *Sorto v. Diversified Maint. Sys., LLC*, No. 20 Civ. 1302 (JS), 2020 WL 7693108, at *2–3 (E.D.N.Y. Dec. 28, 2020); *Duverny v. Hercules Med. P.C.*, No. 18 Civ. 07652 (DLC), 2020 WL 1033048, at *5–6 (S.D.N.Y. Mar. 3, 2020); *Scott v. Whole Foods Mkt. Grp., Inc.*, No. 18 Civ. 0086 (SJF), 2020 WL 9814095, at *3 (E.D.N.Y. Feb. 5, 2020).

It took issue, too, with the First Department's finding that the legislative scheme supported a private right of action. It found that the existence of a liquidated damages provision which § 198(1-a) terms an "additional amount" of recovery, to imply that "recovery of liquidated damages is dependent upon the recovery of an *underpayment*" to the worker—that is, an amount of wages paid less than what was due. *Id.* at 122 (emphasis added). The *Grant* Court also noted that the NYLL's legislative history showed that the statute was "aimed at remedying employers' failure to pay the amount of wages required by contract or law," and not "the frequency or timing of wage payments." *Id.* at 125. As to an implied right of action, the *Grant* Court noted that "multiple official enforcement mechanisms" exist to respond to violations of the frequency-of-payments provision, undermining the argument for implying a private right of action. *See id.*

Since *Grant*, the five courts in this District to consider the issue, siding with *Vega* over *Grant*, have held that an express private right of action exists to vindicate frequency-of-payments claims under the NYLL. *See, e.g., Charles et al. v. Aritzia*, No. 23 Civ. 09389, 2024 WL 4167502, at *5 (S.D.N.Y. Sept. 12, 2024) (Garnett, J.); *Bryant v. Buffalo Exch., Ltd.*, 2024 WL 3675948, at *3 (S.D.N.Y. Aug. 6, 2024) (Subramanian, J.); *Gamboa v. Regeneron Pharms., Inc.*, 2024 WL 815253, at *5–6 (S.D.N.Y. Feb. 27, 2024) (Karas, J.); *Zachary v. BG Retail, LLC*, 2024 WL 554174, at *5 (S.D.N.Y. Feb. 12, 2024) (Briccetti, J.); *Sarmiento v. Flagge Contracting Inc.*, 2024 WL 806137, at *9–10 (S.D.N.Y. Feb. 27, 2024), *report and recommendation adopted*, No. 22 Civ. 9718 (VSB) (JLC), 2024 WL 1908607, at *1 (S.D.N.Y. May 1, 2024) (Broderick, J.). Other district courts within the Second Circuit have similarly held. *See Birthwright v. Advance Stores Co., Inc.*, 2024 WL 3202973, at *1 (E.D.N.Y. June 27, 2024) (Brown, J.); *Levy v. Endeavor Air Inc.*, 2024 WL 1422322, at *2 (E.D.N.Y. Mar. 29, 2024) (Vitaliano, J.); *Garcia v. Skechers USA Retail, LLC*, 2024 WL 1142316, at *6 (E.D.N.Y. Mar.

7

15, 2024) (Chen, J.); *Covington v. Childtime Childcare, Inc.*, 2024 WL 2923702, at *5 (N.D.N.Y. June 10, 2024) (Sannes, C.J.); *Bazinett v. Pregis LLC*, 2024 WL 1116287, at *6 (N.D.N.Y. Mar. 14, 2024) (D'Agostino, J.). Before the Report in this case, only one decision in the Circuit had sided with *Grant*. *See Galante v. Watermark Servs. IV, LLC*, 2024 WL 989704, at *10 (W.D.N.Y. Mar. 7, 2024) (Geraci, J.).[2]

This Court finds persuasive the reasoning of the large majority of federal courts to consider, post-*Grant*, this pure question of law. In particular, the Court adopts by reference Judge Subramanian's perceptive analysis in *Bryant* as closely tracking its own. The Court adds only the following:

The statutory text supplies the starting point of the analysis. *See Peyton v. New York City Bd. of Standards & Appeals*, 140 N.Y.3d 271, 279 (2020) ("Because the clearest indicator of legislative intent is the statutory text, the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof." (citation omitted)). The key language here appears in § 198(1-a), which states that an employee may bring a "wage claim" for an "underpayment" violative of article 6 of the NYLL. Article 6 includes the frequency-of-payments provision in § 191. Under § 198(1-a), an underpayment consists of any payment "less

---

[2] Although the issue appears likely to reach the Second Circuit unless it is resolved first by the New York Court of Appeals, the Circuit has not yet confronted the issue. Its recent decision in *Guthrie v. Rainbow Fencing Inc.*, No. 23-350, 2024 WL 3997427 (2d Cir. Aug. 30, 2024), addresses a different issue. There, the Circuit rejected an employee's claim for relief under the NYLL's wage-notice provision, § 195, for failure to plead a "concrete downstream injury-in-fact." *Id.* at *7. By contrast, as this Court previously recognized, *see Espinal v. Sephora USA, Inc.*, No. 22 Civ. 3034 (PAE) (GWG), 2023 WL 2136392, at *1–2 (S.D.N.Y. Feb. 21, 2023), the direct and immediate economic harm experienced by an employee who does not timely receive pay is a classically cognizable injury-in-fact. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021) ("monetary harms" are "the most obvious" cognizable injuries).

8

than the wage to which he or she is entitled." The central question is thus whether a frequency-of-payments claim constitutes a "wage claim" for "underpayment."

Considered in a vacuum, without reference to the FLSA's parallel provision, the Second Department's analysis in *Grant* would have some force. As the competing textual analyses in *Vega* and *Grant* reflect, the frequency-of-payments provision is less than ideally clear. Its textual ambiguity invites reasonable arguments on both sides of the ledger. The *Grant* Court rationally reasoned that an employee who receives a full, albeit belated, wage payment has not "received a lesser amount of earnings than agreed upon" and thus cannot be said to have experienced an "underpayment" of wages. 204 N.Y.S.3d at 122. Judge Gorenstein similarly reasoned that, "where the only violation is a frequency-of-payment violation, as soon as the wages are paid at the next (albeit incorrect) pay period, it is not clear that there are any 'wages' that can be 'found to be due.'" Report at 8.[3]

---

[3] The Report separately reasoned that the NYLL's liquidated damages provision disfavors a private right of action for untimely wage payment claims. It noted that plaintiffs seek liquidated damages measured at a full week's pay for every week where wages were untimely paid. But that figure, the Report noted, exceeded "by astronomical proportions the actual harm to the plaintiffs," whose actual damages were merely "the lost use of the money for a one-week period." *Id.* at 9. Were such liquidated damages imposed, the Report noted, a plaintiff who had been paid in full would stand to receive approximately 57,800% of her actual loss. *Id.* at 9–10. The Report found it improbable that the New York Legislature intended such "potentially absurd results." *Id.* at 10 (citation omitted); *see also id.* ("[The Court] do[es] not believe it was the intent of the Legislature to impose a penalty not of 100% of the harm to the worker but instead a penalty likely to be on the order of 57,800% of the harm to the worker. In other words, the New York Legislature's inclusion of the 100% liquidated damages penalty provision in section 198(1-a) shows us how it viewed the term 'underpayment' in the statute."). In this Court's assessment, however, that argument gains limited traction. The NYLL's liquidated damages provision, like that of the FLSA, inherently overcompensates the plaintiff, and often dramatically, relative to her actual economic loss, whether her wage claim is for underpayment or delayed payment of a weekly wage. *See, e.g., Rana v. Islam*, 887 F.3d 118, 119 n.1 (2d Cir. 2018) (per curiam) (authorizing a payment of $114,677.64 for late-paid wages, plus an additional $114,677.64 in liquidated damages); *Bryant*, 2024 WL 3675948, at *4 ("[C]ourts have interpreted this language to allow an employee to sue for late payments—rather than just unpaid amounts—and to recover liquidated damages alone in an amount equal to the wages that were paid late.") (collecting

9

The NYLL, however, is not properly construed in a vacuum. The assembled case law instead requires considering the NYLL in the context in which it was adopted. That context, as the First Department recognized in *Vega*, centrally includes the FLSA, the federal law on which the NYLL was largely patterned. *See Vega*, 107 N.Y.S.3d at 288; *see also* N.Y. Spons. Memo., 2009 A.B. 6963, Leg. 232, Reg. Sess. (April 8, 2009) (2009 amendment to the NYLL is designed to "conform New York law to the Fair Labor Standards Act and the laws of other states that allow workers liquidated damages once they establish that their employer violated the wage law"); *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) ("New York's Labor Law is the state analogue to the federal FLSA."). Indeed, as to numerous issues involving rights and remedies, courts have construed the NYLL to track the FLSA. *See, e.g., Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 359 (E.D.N.Y. 2015) ("[The NYLL] mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime."); *Ramos v. Baldor Specialty Foods, Inc.*, No. 10 Civ. 6271 (RMB), 2011 WL 2565330, at *5 n.3 (S.D.N.Y. June 16, 2011) ("Because the New York Labor Law applies the same exemptions as the FLSA, the [FLSA] analysis applies equally to Plaintiffs' NYLL claims.") (citations omitted), *aff'd*, 687 F.3d 554 (2d Cir. 2012); *Zubair v. EnTech Eng'g P.C.*, 808 F. Supp. 2d 592, 600 (S.D.N.Y. 2011); *Henderson v. Transp. Grp., Ltd.*, No. 09 Civ. 7328 (DLC), 2010 WL 2629568, at *1 (S.D.N.Y. July 1, 2010); *Bennett v. Progressive Corp.*, 225 F. Supp. 2d 190, 215 (N.D.N.Y. 2002); *Jule v. Kiamesha Shores Prop. Owners Ass'n Inc.*, 179 N.Y.S.3d 396, 401 n.2 (3d Dep't 2022), *appeal dismissed*, 39 N.Y.3d 1124 (2023).

---

cases); *cf. O'Neil*, 324 U.S. at 707 ("double payment" is an appropriate liquidated damages remedy under the FLSA, the federal analogue to the NYLL).

On the point at issue here, the FLSA is highly apposite. It provides that an employer who underpays an employee is "liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). And as the Second Circuit has held, the liquidated damages provisions of the NYLL and FLSA are *in pari materia* and to be construed together. *See Rana v. Islam*, 887 F.3d 118, 123 (2d Cir. 2018) ("While the wording of the FLSA and NYLL liquidated damages provisions are not identical, there are no meaningful differences."). Indeed, the NYLL's liquidated damages provision has been amended twice since 2009, "making it easier for employees to claim liquidated damages" and to "bring [the NYLL] more closely in line with the FLSA." *Rana*, 887 F.3d at 122.[4]

Critically, the FLSA's text as it relates to delayed wage payments is no more favorable to employees than that of the NYLL. Yet it is well-established—and has been for nearly 80 years—that § 216 of the FLSA authorizes the recovery of liquidated damages as compensation for delayed payments under the Act. *See O'Neil*, 324 U.S. at 707. As the Supreme Court explained:

> [The FLSA's liquidated damages provision] constitutes a Congressional recognition that failure to pay the statutory minimum on time may be so detrimental

---

[4] Before 2009, an employee bore the burden of proving the employer's failure to pay wages. *See Ryan v. Kellogg Partners Institutional Servs.*, 19 N.Y.3d 1, 10 n.8 (2012). In 2009, the legislature shifted the burden to the employer to "prove[] a good faith basis to believe that its underpayment of wages was in compliance with the law in order to avoid liquidated damages." 2009 N.Y. Laws ch. 372 § 1. And in 2010, the NYLL was amended to increase the recoverable liquidated damages amount from 25 percent of the total amount of wages found to be due to "the full amount of any underpayment, all reasonable attorney's fees, [and] prejudgment interest as required under the civil practice law and rules[.]" 2010 N.Y. Laws ch. 564 § 7; *see also Ryan*, 19 N.Y.3d at 10 n.8; *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, No. 14 Civ. 10234 (JGK) (JLC), 2016 WL 4704917, at *17 (S.D.N.Y. Sept. 8, 2016) (the 2009 and 2010 NYLL amendments demonstrate "an interest in aligning NYLL liquidated damages with the FLSA and can be read as a practical recognition of the dual punitive and compensatory effects of an award of liquidated damages under the statute").

> to maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers and to the free flow of commerce, that double payment must be made in the event of delay in order to insure restoration of the worker to that minimum standard of well-being.

*Id.* (citation omitted). The courts that have found a private right of action under the NYLL, such as the First Department in *Vega*, have noted the New York Legislature's intention that its remedial provisions provide at least equal protection to workers as those as of the FLSA. *See, e.g., Bryant*, 2024 WL 3675948, at *5; *Cooke v. Frank Brunckhorst Co., LLC*, No. 23 Civ. 6333, 2024 WL 2263087, at *6 (E.D.N.Y. May 18, 2024); *Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *2; *Gillett v. Zara USA, Inc.*, No. 20 Civ. 3734 (KPF), 2022 WL 3285275, at *11 (S.D.N.Y. Aug. 10, 2022); *Caul*, 2021 WL 4407856, at *2–3.

This Court is likewise persuaded that, in light of the long-settled construction of the FLSA, the NYLL affords a private right of action for claims of delayed wage payments in violation of § 191. "[T]he New York State legislature rewrote its liquidated damages provision to cover the same ground as the FLSA." *Rana*, 887 F.3d at 123. And there is no evidence—textual or otherwise—that in so doing, the New York Legislature intended to depart from the FLSA in its treatment of such claims. *See CNH Diversified Opportunities v. Cleveland Unlimited, Inc.*, 36 N.Y.3d 1, 11 (2020) ("[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it.") (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum L. Rev. 527, 537 (1947)).

Construing the NYLL to empower manual employees to vindicate their statutory right to weekly pay also accords with the statute's history and purposes. The NYLL was enacted to "strengthen and clarify the rights of employees to the payment of wages." *Truelove v. Ne. Cap. & Advisory, Inc.*, 95 N.Y.2d 220, 223 (2000). A state senate committee report on a 2021

12

amendment to the neighboring wage-deduction provision, § 193, stated that article 6, as a whole, "was created to prevent employers from benefiting from the fruits of their employees' labor by withholding wages" and that courts should not read the statute "extremely narrowly" so as to "overlook its rights-affirming language." N.Y. State Sen. Supporting Mem., Bill Jacket, 2021 S.B. 858, ch. 397. Section 191, in requiring weekly wage payments, recognizes that "money has a real time value" and that receiving weekly pay is important to such workers. *Zachary*, 2024 WL 554174, at *8 (quoting *Grant*, 204 N.Y.S.3d at 117). And although the claim in this lawsuit involves only one-week pay delinquencies, the question whether the NYLL permits an employee to sue over late pay equally applies to more extreme transgressions (delays of months or years).

Finally, it is notable that two years after *Vega*, the New York Legislature amended the § 193 wage deduction provision to correct judicial interpretations of it. *See* 2021 Sess. Law News of N.Y. ch. 397 § 858 ("[The legislature] has a responsibility to . . . clarify for the courts once and for all that wage theft remains completely and without exception in violation of statute and all employees are entitled to full wages, benefits and wage supplements earned"); N.Y. Spons. Memo., S.B. 858, 2019–2020 Sess. (purpose of No Wage Theft Loophole Act, amending § 193 of the NYLL, was to close a "judicially created loophole"). But it left *Vega*'s construction of § 191 undisturbed. The legislature's decision to repudiate judicial interpretations of the wage-deduction provision while leaving intact the then-governing interpretation of the frequency-of-payments provision is evidence of its comfort with *Vega*'s holding. *See Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990) ("We assume that [the legislature] is aware of existing law when it passes legislation."); *cf.* A. Scalia & B. Garner, *Reading Law: The Interpretation of Legal Texts* 322 (2012) ("If a word or phrase has been . . . given a uniform interpretation by inferior

13

courts . . . a later version of that act perpetuating the wording is presumed to carry forward that interpretation.").

The Court accordingly holds, with the vast majority of federal courts to consider the point following *Grant*, that the NYLL affords employees a private right of action to sue to vindicate their right under § 191(1)(a)(i) to weekly wage payments.

The Court separately holds that, in any event, there is an implied private right of action to so sue. The districts in this Circuit are again in near-unanimity on this point. *See Gamboa*, 2024 WL 815253, at *5 (collecting cases). In assessing whether a statute gives rise to an implied right of action, New York courts apply a three-part test, considering "(1) whether the plaintiff is one of the class for whose particular benefit the statute was enacted; (2) whether recognition of a private right of action would promote the legislative purpose; and (3) whether creation of such a right would be consistent with the legislative scheme." *See Ortiz v. Ciox Health LLC*, 37 N.Y.3d 353, 360 (2021) (citation omitted). The Report found the first and second factors met, as is clearly correct. *See* Report at 17 ("Plaintiffs here are members of the class for whose particular benefit the statute was enacted," and "the general intent of article 6 of the Labor Law is to strengthen the rights of employees . . . allowing them to vindicate their rights under the NYLL through a private cause of action would promote the legislative purpose." (cleaned up)). The Report found the third factor to foreclose an implied right, but this Court disagrees, substantially for the reasons above.

The Report relies for this conclusion on the decision in *Konkur v. Utica Acad. of Sci. Charter Sch.*, 38 N.Y.3d 38, 40 (2022). There, an employee sued under the NYLL's "wage-kickback" provision, which prohibits employers from requesting or demanding a "return, donation[,] or contribution of any part or all of said employee's wages." NYLL § 198-b. The

14

New York Court of Appeals held that the existence of alternative statutory enforcement mechanisms foreclosed an implied private right of action under the third prong, in that the statute included "two robust enforcement mechanisms" for § 198-b: criminal prosecution by the New York Attorney General or civil prosecution by the Labor Department. *Konkur*, 165 N.Y.S.3d 1, 42–43. It declined to recognize "another enforcement mechanism beyond the statute's already comprehensive scheme." *Id.* at 43 (citation omitted). The Report concludes that the Court of Appeals would similarly reject as unnecessary an implied private right of action to enforce the right in § 191 to weekly wage payments.

The Report's conclusion overlooks an important part of *Konkur*: in declining to recognize an implied right of action with respect to § 198-b violations, the Court of Appeals expressly distinguished that provision from the one at issue here. It concluded that "wage claims" must be "based upon violations of one or more of the *substantive* provisions of Labor Law article 6." *Id.* at 44 (emphasis added, citation omitted). Section 198-b did not qualify as such a provision, but, it noted, § 191 did. *See id.* ("It is Labor Law § 191 that generally regulates payment of wages by employers and creates reciprocal rights of employees. While at least one federal court has held that section 198-b qualifies as such a wage claim under section 198, we disagree." (cleaned up)).

With *Konkur* put aside, the Court finds, along with nearly all other courts to consider the question, that an implied right of action is consistent with the legislative scheme. *See, e.g.*, *Aritzia*, 2024 WL 4167502, at *6; *Gamboa*, 2024 WL 815253, at *5–6; *Zachary*, 2024 WL 554174, at *8; *Garcia*, 2024 WL 1142316, at *6; *Bazinett*, 2024 WL 1116287, at *8; *Gutierrez v. Carter's Inc.*, No. 22 Civ. 3234 (AMD) (LB), 2023 WL 7337184, at *3–4 (E.D.N.Y. Nov. 7, 2023); *Shugars*, 2023 WL 7280902, at *7; *Freeland v. Findlay's Tall Timbers Distribution Ctr.*,

15

LLC, 681 F. Supp. 3d 58, 75 (W.D.N.Y. 2023); *Wal-Mart Assocs., Inc.*, 2022 WL 874311, at *8; *Caul*, 2021 WL 4407856, at *3.

In sum, the Court is persuaded that the New York Court of Appeals would conclude that a private right of action is available to plaintiffs under the NYLL to pursue their right to weekly wage payments.

## CONCLUSION

For the reasons stated herein, the Court denies Sephora's motion to dismiss. This action remains under the able pretrial supervision of Judge Gorenstein. The Clerk of Court is respectfully directed to terminate all pending motions.

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: September 19, 2024
New York, New York